FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 05, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLEN MORGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | No. 2:22-cv-00122-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>**ECF No. 8** |

Before the Court is Plaintiff's Motion to Remand, ECF No. 8. Plaintiff is

represented by Joel B. Ard and David K. DeWolf. Defendant is represented by

Aravind Swaminathan and Thomas K. Fu. The Court has reviewed the motion and

related filings, considered the parties' arguments, and is fully informed. For the

reasons discussed below, the Court denies Plaintiff's Motion to Remand, ECF

No. 8.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 1

# BACKGROUND

**A. Procedural Posture**

Plaintiff filed suit on May 3, 2022, in Spokane County Superior Court. ECF No. 1 at 38-51. Defendant removed the action to federal court on May 19, 2022. ECF No. 1. On May 26, 2022, Plaintiff moved the Court to remand the matter back to state court. ECF No. 8. Plaintiff made a single argument: Defendant's Notice of Removal was untimely. *See* ECF No. 8. Defendant opposed Plaintiff's Motion to Remand and responded to the untimeliness argument. *See* ECF No. 18. In reply, Plaintiff asserted for the first time that this Court is unable to exercise its limited jurisdiction because he "seek[s] a statutory damages remedy." ECF No. 20 at 5. Plaintiff asserts that the Complaint does not confer Article III standing and thereby requires remand to state court. ECF No. 20 at 5-8.

In the Motion to Remand, Plaintiff advised why he filed this action, which is nearly identical to *Gray v. Twitter, Inc.*, No. 20-cv-01389 (W.D. Wash.),[1] in the

---

[1] Plaintiff's counsel filed the *Gray* case in the Western District of Washington on September 21, 2020. On August 30, 2022, Plaintiff provided notice that Darlin Gray, the plaintiff in *Gray v. Twitter, Inc.*, voluntarily dismissed that action. ECF No. 27; *Gray v. Twitter, Inc.*, No. 20-cv-01389, ECF No. 36. The matter was dismissed without prejudice.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 2

1   wake of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct.

2   2190 (2021).  ECF No. 8 at 5-7.  While Plaintiff explained the Supreme Court's

3   holding in *TransUnion* in this section of the original motion explained, Plaintiff did

4   not argue that Article III standing's requirements were lacking in this matter.  *See*

5   ECF No. 8 at 5-7.  However, in reply and at the August 24 hearing, Plaintiff

6   primarily argued remand is appropriate because Article III standing is not satisfied.

7   *See* ECF No. 20.  Defendant requested leave to respond to Plaintiff's new

8   argument.

9           On September 9, 2022, the Court directed the parties to provide

10  supplemental briefing on whether Article III standing exists.  ECF No. 29.

11  Defendant filed a supplemental brief on September 23, 2022.  ECF No. 30.

12  Plaintiff responded on September 30, 2022.  ECF No. 31.  The Court granted

13  Defendant leave to file a surreply, which was filed on October 14, 2022.  ECF Nos.

14  32, 33.  On January 25, 2023, Plaintiff filed Notice of Supplemental Authority.

15  ECF No. 34.  On February 21, 2023, Plaintiff filed a first amended complaint.[2]

16

17  [2] The First Amended Complaint expands upon the original by providing additional

18  facts and numerous newly attached exhibits.  These include pleadings in multiple

19  cases like *Twitter, Inc. v. Elon R. Musk, X Holdings I, Inc., and X Holdings II, Inc.*,

20  No. 2022-0613-KSJM (Del. Ct. Ch) and *United States v. Twitter, Inc.*, No. 3:22-

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 3

ECF No. 35.  On May 2, 2023, the Court held a status hearing in the above-captioned matter.  *See* ECF Nos. 36, 38.  At that hearing, Defendant did not object to Plaintiff's filing of an amended complaint.

**B. Summary of Allegations**

Plaintiff alleges Defendant violated his right to privacy.  *See, e.g.*, ECF No. 1 at 38, 39 ("Privacy is a 21st century civil rights issue;" "powerful companies disregard their promises to users about privacy;" "same companies . . . profit from refusing to honor the privacy choices exercised by users;" "as with other civil rights violations, [Washington has] established statutory violations . . . to protect the civil right in privacy of users' phone numbers and other records").  Plaintiff brings this civil action pursuant to the Criminal Profiteering Act,[3] RCW

---

CV-3070 TSH, 2022 WL 1768852 (N.D. Cal. May 26, 2022); newly reviewed SEC filings; and disclosures made and testimony given by a whistle blower.  Of import, the First Amended Complaint does not substitute or assert an additional legal basis upon which Plaintiff believes relief is warranted.  *See* ECF No. 35.

[3] The Washington Supreme Court has held that suits brought under the Criminal Profiteering Act, RCW 9A.82.100, are civil actions.  *Winchester v. Stein*, 959 P.2d 1077, 1085 (Wash. 1998).

9A.82.010, 9A.82.100.[4]  ECF No. 1 at 39.  Specifically, Plaintiff alleges that Defendant unlawfully obtained his and other users' cell phone numbers which he and other users register with a Twitter account and then sold that information to third-party advertisers from which Defendant illegally profited.  *See* ECF No. 1 at 43-44.

## ARTICLE III STANDING

Defendant argues that Plaintiff has alleged sufficient facts that, when accepted as true, satisfy the elements of Article III standing.  Specifically, Defendant asserts Plaintiff has pled that (1) he has suffered an intangible concrete

---

[4] "A person who sustains injury to his or her person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity . . . may file an action in superior court for the recovery of damages[.]"  RCW 9A.82.100(1)(a).  "Criminal profiteering" is defined as "any act, including any anticipatory or completed offense, committed for financial gain, that is chargeable or indictable under the laws of the state in which the act occurred and . . . punishable as a felony and by imprisonment for more than one year, regardless of whether the act is charged or indicted."  RCW 9A.82.010(4).  This includes the unauthorized sale or procurement of telephone records in violation of RCW 9.26A.140.  RCW 9A.82.010(4)(nn).

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 5

harm, which is an injury in fact, even following the Supreme Court's decision in *TransUnion*, (2) the alleged injury was caused by Defendant, and (3) the alleged harm is redressable under RCW 9.26A.140.  ECF No. 30 at 10-14.

**A. Legal Standard**

"Article III [of the Constitution] confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion*, 141 S. Ct. at 2203.  A case or controversy under Article III requires a plaintiff to "have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).  Article III standing requires a showing "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.*

*1.  TransUnion LLC v. Ramirez*

In *TransUnion*, the Supreme Court reiterated its holding in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ("*Spokeo II*"): a plaintiff's injury in fact must be concrete.  141 S. Ct. at 2204.  A plaintiff's injury must be "real, and not abstract." *Spokeo II*, 578 U.S. at 340.  "[C]ertain harms readily qualify as concrete injuries under Article III." *TransUnion*, 141 S.Ct. at 2204.  These include "traditional tangible harms, such as physical harms and monetary harms." *Id.*  Intangible harms may also be concrete. *Id.*  However, to be concrete, intangible injuries must

be shown to have "a close relationship to harms traditionally recognized as

providing a basis for lawsuits in American courts." *Id.* The Supreme Court

outlined examples of federally recognized intangible concrete harms. *Id.* They

include reputational harms, disclosure of private information, and intrusion upon

seclusion. *Id.* (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987) (reputational

harms); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (disclosure of

private information); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir.

2020) (intrusion upon seclusion)). Importantly, an intangible harm must have

caused a plaintiff an injury in fact, not solely an injury in law. *Id.* at 2205-06.

Justice Kavanaugh posed the following hypothetical to demonstrate the difference

between an injury in fact and an injury in law:

> Suppose first that a Maine citizen's land is polluted by a nearby factory.
> She sues the company, alleging that it violated a federal environmental
> law and damaged her property. Suppose also that a second plaintiff in
> Hawaii files a federal lawsuit alleging that the same company in Maine
> violated that same environmental law by polluting land in Maine. The
> violation did not personally harm the plaintiff in Hawaii.

*Id.* at 2205. The hypothetical statute provides a cause of action for both plaintiffs,

yet only the Maine citizen has Article III standing because she suffered an injury in

fact, *i.e.*, her polluted land. *Id.* at 2206.

### 2. Burden of Proof

"'The party invoking federal jurisdiction bears the burden of establishing'

the elements of standing." *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021)

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 7

(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  All three elements

of standing "must be supported . . . with the manner and degree of evidence

required at the successive stages of the litigation." *Defs. of Wildlife*, 504 U.S. at

561.  "At the pleading stage, [the party asserting federal jurisdiction] is not

required to prove the[] elements [of standing]." *Pinkert v. Schwab Charitable

Fund*, 48 F.4th 1051, 1054 (9th Cir. 2022).  The proponent of Article III standing

must only establish that the plaintiff has "allege[d] facts that, when accepted as

true, show that [the elements] are satisfied. *Id.*

  When analyzing a plaintiff's argument for remand to state court, the Court

"must accept as true all material allegations of the complaint and must construe the

complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501

(1975).  Thus, "[a]t the pleading stage, general factual allegations of injury

resulting from the defendant's conduct may suffice" as the Court must "'presum[e]

that general allegations embrace those specific facts that are necessary to support

the claim.'" *Defs. of Wildlife*, 504 U.S. at 561 (alteration in original) (quoting

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *cf. Lucas v. S.C. Coastal

Council*, 505 U.S. 1003, 1014 n.3 (1992) (cautioning that although the court

"require[s] specific facts to be adduced by sworn testimony" at the summary

judgment stage, a "challenge to a generalized allegation of injury in fact made at

the pleading state . . . would have been unsuccessful").  However, the proponent of

Article III standing cannot "rely on a bare legal conclusion to assert injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *see Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 954-55 (9th Cir. 2011) (en banc) (holding plaintiff who did not allege which barriers existed at a store and how they impacted his disability could not establish injury in fact simply by claiming that the store deprived him of "full and equal enjoyment" in violation of the ADA).

Here, as the removing party, it is Defendant's burden to establish Article III standing. *Tailford v. Experian Info. Sols.*, Inc., 26 F.4th 1092, 1099 (9th Cir. 2022); *Morgan v. Bank of Am., N.A.*, No. 20-CV-00157, 2020 WL 3979660, at *2 (E.D. Wash. July 14, 2020) (not reported) (finding Defendant did not establish Article III standing given it conceded Plaintiff alleged no concrete injury). Thus, Defendant is required to establish that Plaintiff has "allege[d] facts that, when accepted as true, show that [the elements of standing] are satisfied." *Pinkert*, 48 F.4th at 1054.

**B. Discussion**

*1. Injury in Fact*

Plaintiff does not allege physical or monetary harm, so Plaintiff has not suffered a readily qualified concrete injury in fact. *See TransUnion*, 141 S.Ct. at 2204. Instead, Plaintiff alleges Defendant violated his right to privacy, *see, e.g.*, ECF No. 1 at 38-39, which is an intangible harm. Defendant asserts that Plaintiff's

1    alleged intangible harm is concrete because it is analogous to the common law torts

2    of disclosure of private information and intrusion upon seclusion.  ECF No. 30 at

3    11-14.  Thus, Defendant argues that Plaintiff's allegation has "a close relationship

4    to harms traditionally recognized as providing a basis for lawsuits in American

5    courts." *TransUnion*, 141 S.Ct. at 2204 (citing *Davis*, 554 U.S. at 733).  "This

6    inquiry asks whether plaintiffs have identified a close historical or common-law

7    analogue for their asserted injury.  *Spokeo [II]* does not require an exact duplicate

8    in American history and tradition."  *Id.*

9            a.   Analysis of RCW 9.26A.140

10        Plaintiff's allegation that Defendant procured or sold his telephone records

11   without authorization falls under RCW 9.26A.140.  RCW 9.26A.140 does not

12   provide a cause of action for a tort; it is an anti-pretexting[5] law.  House Bill Report,

13   S.B. 6776, 2006 Leg., 59th Sess. (Wash. 2006); Francoise Gilbert, *How Does*

14   *TRPPA Affect Businesses?,* Prac. Law at 49, 52 (December 2007).  The

15   Washington statute is similar to the Telephone Records and Privacy Protection Act

16

17

18   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [5] *Pretexting*, MERRIAM-WEBSTER.COM, https://www.merriam-

19   webster.com/dictionary/pretexting (last visited May 5, 2023) ("the practice of

20   presenting oneself as someone else in order to obtain private information").

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 10

of 2006 ("TRPPA").[6]  Gilbert, Prac. Law at 49; *compare* 120 Stat 3568 *with* RCW

9.26A.140.  Defendant argues that the cause of action Plaintiff has brought under

---

[6] Congress enacted TRPPA based on its findings that "(1) telephone records can be

of great use to criminals because the information contained in call logs may

include a wealth of personal data; (2) call logs may reveal the names of telephone

users' doctors, public and private relationships, business associates, and more; (3)

call logs are typically maintained for the exclusive use of phone companies, their

authorized agents, and authorized consumers."  PL 109-476, Jan. 12, 2007, 120

Stat 3568.  Congress found that there was a privacy interest in telephone records of

consumers, and it wished to protect that interest.  *See id.*  Washington's legislature

found the same, which was its reason for passing RCW 9.26A.140.  *See* House Bill

Report, S.B. 6776, 2006 Leg., 59th Sess. (Wash. 2006) (reporting the purpose of

enacting RCW 9.26A.140 was to protect Customer Proprietary Network

Information from being disclosed due to pretexting).  Both the Washington statute

and the federal statute were both enacted shortly after the Hewlett-Packard

pretexting scandal, which involved the unauthorized utilization of telephone

records.  *See Hewlett-Packard Pretexting Scandal*: *Hearing Before the Subcomm.*

*on Oversight and Investigations of the H. Comm. on Energy and Com.*, 109th

Cong. (2006).

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 11

RCW 9.26A.140 by virtue of the Criminal Profiteering Act is "closely analogous" to the common law torts of disclosure of private information and intrusion upon seclusion.  ECF No. 20 at 12-13.

As an initial matter, the Court does not find RCW 9.26.140 is closely analogous to the common-law tort of intrusion upon seclusion.  "The common law has long recognized actions at law against defendants who invaded the private solitude of another by committing the tort of 'intrusion upon seclusion.'" *Gadelhak*, 950 F.3d at 462 (citing RESTATEMENT (SECOND) OF TORTS § 652B (AM. LAW INST. 1977)).  The Ninth Circuit discussed the tort of intrusion upon seclusion in *Van Patten v. Vertical Fitness Grp.*, *LLC*, 847 F.3d 1037 (9th Cir. 2017).  The question before the appellate court was whether a violation of the Telephone Consumer Protection Act of 1991's prohibition of unrestricted telemarketing was sufficient to establish Article III standing.  *Id.* at 1043.  It held that such an alleged violation was a "concrete injury in fact sufficient to confer Article III standing." *Id.*  There are no facts plead that would demonstrate an alleged invasion of Plaintiff's private solitude.  Plaintiff does not allege that Twitter made unsolicited contact with him which could be analogous to telemarketing.  Thus, the Court finds Defendant's argument that a violation of RCW 9.26.140 is closely analogous to the common law tort of intrusion upon seclusion is without merit.

1    The Court turns next to Defendant's argument that a violation of RCW

2    9.26.140 is closely analogous to the common law tort of disclosure of private

3    information.  As discussed above, Plaintiff alleges that Defendant disseminated the

4    private information associated with his and other Twitter users' cell phone

5    numbers, which include the numbers themselves and metadata contained within to

6    third-party advertisers.

7        Plaintiff's allegation is similar to the plaintiff's allegation in *Tailford*.

8    There, the plaintiff alleged Experian violated certain provisions of the Fair Credit

9    Reporting Act ("FCRA"), which had been "established to protect concrete interests

10   of privacy and accuracy in the reporting of consumer credit information[.]"

11   *Tailford*, 26 F.4th 1099.  The Ninth Circuit held that the plaintiff had alleged a

12   sufficient injury in fact because the provisions alleged to have been violated were

13   substantive and "not merely procedural rights."  *Id.*; *cf. Robins v. Spokeo, Inc.*, 867

14   F.3d 1108, 1114 (9th Cir. 2017) ("*Spokeo III*") (holding plaintiff's alleged

15   procedural violations were sufficient to establish standing because of a sufficient

16   risk of losing employment).  The Court explained that "[t]he interest in consumer

17   privacy 'resemble[s] other reputational and privacy interests that have long been

18   protected in the law.'" *Tailford*, 26 F.4th at 1100 (quoting *Spokeo III*, 867 F.3d at

19   1114).  Thus, the court found the plaintiff had alleged a sufficient injury in fact to

20   establish the first prong of Article III standing.  *Id.*

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 13

1    Plaintiff's claim is also similar to the claim presented in *Eichenberger v.*

2  *ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). There, the plaintiff alleged ESPN

3  violated 18 U.S.C. § 2710(b)(1), a section of the Video Privacy Protection Act

4  ("VPPA"), for knowingly disclosing personally identifiable information

5  concerning the plaintiff. *Id.* at 983. This provision of the VPPA "codifies a

6  context-specific extension of the substantive right to privacy." *Id.* Accordingly,

7  the Ninth Circuit noted "every disclosure of an individual's personally identifiable

8  information and video-viewing history offends the interests that [Section

9  2710(b)(1)] protects." *Id.* Given the plaintiff alleged ESPN had violated a

10  "substantive provision protecting consumers' concrete interest in their privacy,"

11  the Ninth Circuit again held that the plaintiff had established a sufficient injury in

12  fact to establish the first prong of Article III standing. *Id.* at 984.

13    The TRPPA is similar to the FRCA and the VPPA in that it was enacted to

14  protect consumers' privacy. *See generally* 120 Stat 3568. The TRPPA was

15  specifically enacted to protect consumers' telephone records. *See id.* The

16  TRPPA's state-law equivalents, like RCW 9.26A.140, were enacted for similar

17  reasons. *See* House Bill Report, S.B. 6776, 2006 Leg, 59th Sess. (Wash. 2006).

18  Both the TRPPA and RCW 9.26A.140 codify the substantive privacy interests in

19  context-specific situations regarding the unauthorized dissemination or sale of

20  telephone records. Because RCW 9.26A.140 codifies a substantive right involving

privacy in certain telephone records, the Court finds that the cause of action

available under RCW 9.26A.140 is analogous to the federally recognized injury of

disclosure of private information and it has a close relationship to harms

traditionally recognized as providing a basis for lawsuits in American courts as

required by *TransUnion*. *See Nayab v. Capital One Bank*, 942 F.3d 480, 492 (9th

Cir. 2019) (holding that being "deprived of the right to keep private the sensitive

information about [one's] person" is historically considered a harm protected by

common law); *see also Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th

548, 553 (9th Cir. 2022) (holding city's collection of real-time location data on

scooters amounted to injury-in-fact sufficient to confer Article III standing).

　　　　b.  Plaintiff's Alleged Harm

　　　　The next question is whether Defendant has shown that Plaintiff has plead

sufficient facts to show that Plaintiff suffered an injury in fact.  This inquiry can be

reduced to the question, "What's it to you?"  *TransUnion*, 141 S.Ct. at 2203

(quoting Scalia, *The Doctrine of Standing as an Essential Element of the

Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)).  With this principle

in mind, the Court considers whether Plaintiff has alleged that he suffered an injury

in fact rather than solely an injury in law.

　　　　Plaintiff alleges that Defendant unlawfully obtained the cell phone number

that he registered with a Twitter account and then sold that phone number and

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 15

other related information to third-party advertisers from which Defendant illegally

profited.  *See* ECF No. 1 at 39, 41-44.  Plaintiff alleges he was harmed by

Defendant's alleged unlawful procurement or sale of his cell phone number and

related information to third-party advertisers who "target users based on telephone

numbers."  *See* ECF No. 1 at 39, 41-44.  Plaintiff's alleged injury is "real, and not

abstract."  *Spokeo II*, 578 U.S. at 340.  These allegations, which must be accepted

as true at this stage, are sufficient to establish an injury in fact.[7]  Because

Defendant has successfully demonstrated that Plaintiff has alleged an injury in

fact—an intangible concrete harm that is closely analogous to the common law tort

of disclosure of private information, the Court finds that the first prong of Article

III standing is satisfied.

> 2. *Cause of Injury*

Plaintiff alleges that Defendant violated his right to privacy.  ECF No. 1 at

38-39, 41-44.  Thus, Plaintiff alleges Defendant is the cause of his injury.

Defendant's acknowledgment of Plaintiff's allegation, ECF No. 30 at 8, n. 1, is

sufficient to establish causation for standing purposes.  *Defs. of Wildlife*, 504 U.S.

at 651 ("At the pleading stage, general factual allegations of injury resulting from

---

[7] The Court's finding is not a determinative of whether Plaintiff's allegations are

sufficient to survive the subsequent stages of litigation.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 16

1    the defendant's conduct may suffice . . ."); *Pinkert*, 48 F.4th at 1054.

2        *3. Redressability*

3        RCW 9.26A.140 provides for at least $5,000 liquidated damages for each

4    successfully proven violation.  The Complaint contains this remedy.  ECF No. 1 at

5    44; ECF No. 35 at 23; *see also* ECF No. 8 at 4 n.1, 5 n.2, 11.  Defendant

6    acknowledges that a successfully proven violation of this statute provides such a

7    remedy, and that Plaintiff has accurately plead this fact.  ECF No. 30 at 8 n.1

8    (quoting ECF No. 1 at 65) ("And [Plaintiff] seeks redress from Twitter for that

9    injury—in the form of 'statutory damages of $5,000 for each violation.'").  Yet,

10   Plaintiff asserts that Defendant "declined to even attempt to" demonstrate whether

11   Plaintiff's harm is redressable.  *See* ECF No. 31 at 13.

12       Defendant has the burden in establishing Article III standing.  However,

13   Defendant is not required to independently plead that Plaintiff's complaint

14   provides the possibility of redress.  Rather Defendant must only establish that

15   Plaintiff has "allege[d] facts that, when accepted as true, show" redressability is

16   satisfied.  *Pinkert*, 48 F.4th at 1054.  Defendant has done so.  Thus, Defendant has

17   established Plaintiff's claim is redressable.

18       *4. Conclusion*

19       Defendant has demonstrated that Plaintiff alleged an intangible concrete

20   harm that is closely analogous to the common law tort of disclosure of private

1   information.  Defendant has also demonstrated that Plaintiff alleged he suffered an

2   injury in fact, not solely an injury in law.  Finally, Defendant has acknowledged

3   that Plaintiff asserts Defendant is the cause of Plaintiff's harm and Plaintiff has

4   correctly identified that RCW 9.26A.140 provides redress for a successfully

5   proven violation.  For these reasons, the Court finds the elements of Article III

6   standing are satisfied.

## FEDERAL JURISDICTION

7

8   **A. Legal Standard**

9        "Federal courts are courts of limited jurisdiction.  They possess only that

10  power authorized by Constitution and statute[.]"  *Kokkonen v. Guardian Life Ins.*

11  *Co. of Am.*, 511 U.S. 375, 377 (1994).  A cause of action is presumed to lie outside

12  the federal court's limited jurisdiction.  *Id.*  The party asserting jurisdiction has

13  "the burden of establishing the contrary."  *Id.*

14        *1.  Removal Generally*

15        "A defendant may remove to federal district court an action first brought in

16  state court when the district court would have original jurisdiction."  *Rodriguez v.*

17  *AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013); 28 U.S.C. §

18  1441(a).  The Class Action Fairness Act ("CAFA") provides federal district courts

19  with "original subject matter jurisdiction over class actions in which a member of

20  the plaintiff class is a citizen of a state different from any defendant and the

aggregate amount of the class members' claims exceeds $5 million." *Rodriguez*, 728 F.3d at 978; 28 U.S.C. § 1332(d)(2).  A defendant seeking removal "bears the burden of establishing that the statutory requirements of federal jurisdiction have been met." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010).

### 2.  Timeliness of Removal

"Procedures for removal are set forth in 28 U.S.C. § 1446." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013).  A defendant seeking to remove an action to federal must file a notice in the district court "within thirty days of receipt from the plaintiff of an initial pleading or other document from which it is ascertainable that the case is removable." *Id.* (citing 28 U.S.C. § 1446(a), (b)(1), (b)(3)).  Section 1446 reads in pertinent part:

> b) Requirements; generally.—(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>  . . .
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

1   28 U.S.C. § 1446(b)(1)-(3).   "To summarize, [the statute] identifies two thirty-day

2   periods for removing a case." *Carvalho v. Equifax Info. Servs.*, *LLC*, 629 F.3d

3   876, 885 (9th Cir. 2010).  If the initial pleading is removable on its face, the first

4   thirty-day removal period is triggered when the defendant receives that pleading.

5   *Id.*  "[I]f the initial pleading does not indicate that the case is removable," the

6   second thirty-day removal period is only triggered when "the defendant receives 'a

7   copy of an amended pleading, motion, order or other paper' from which

8   removability may first be ascertained."  *Id.* (quoting § 1446(b)).

9        The Ninth Circuit has stated, "every complaint is either capable of being

10  removed or not[.]" *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139

11  (9th Cir. 2013).  However, the Ninth Circuit has also recognized that "removable"

12  is not defined in § 1446, *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247,

13  1252 (9th Cir. 2006), so "some pleadings are 'indeterminate' in the sense that the

14  face of the complaint does not make clear whether the required jurisdictional

15  elements are present." *Kuxhausen*, 707 F.3d at 1139 (quoting *Harris v. Bankers

16  Life & Cas. Co.*, 425 F.3d 689, 693 (9th Cir. 2005)).  Accordingly, the Ninth

17  Circuit does "not treat [assessing timeliness] as a strict dichotomy." *Id.*  Rather,

18  the first thirty-day clock under § 1446(b) begins only if "the ground for removal

19  [is] revealed affirmatively in the initial pleading[.]" *Harris*, 425 F.3d at 695.  This

20  prevents a defendant from being "saddl[ed] . . . with the burden of investigating

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 20

jurisdictional facts." *Kuxhausen*, 707 F.3d at 1139. "Removals invoking CAFA jurisdiction are equally subject to [the timeliness] rule[s]." *Id.* (citing *Carvalho*, 629 F.3d at 886).

a. Interplay between Wash. Super. Ct. Civ. R. 3 ("CR 3") and 28 U.S.C. § 1446

A case cannot be removed to federal court until an action has commenced in state court. *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 686 (9th Cir. 2005). To determine whether a cognizable action has commenced in state court, the Court must defer to state law and rules. *Id.* (*citing Herb v. Pitcaim*, 324 U.S. 117, 120 (1945)). This District has acknowledged that a cognizable civil action commences in Washington state court prior to a plaintiff's filing so long as CR 3 is complied with. *Rose v. ReconTrust Co.,* No. 10-cv-394, 2013 WL 1703335, at *2 (E.D. Wash. Apr. 18, 2013).

CR 3 states in pertinent part that a state action commences "by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 *or* by filing a complaint." Wash. Super. Ct. Civ. R. 3 (emphasis added). However, the commencement of an action only remains nonvoid so long as a defendant does not provide a plaintiff with a written demand that "the plaintiff instituting the action shall pay the filing fee and file the summons and complaint within 14 days after service of the demand," CR 3, and the plaintiff then fails to do so. *Ass'n of Ethical*

*Matchmakers v. Together Racketeering Enter.*, No. 97-35228, 1997 WL 702987, at *1 n.2 (9th Cir. 1997). If a plaintiff fails to file the action after a defendant provides a written demand, service of the summons and complaint is void, rendering removal improper. *Id.*; Wash. Super. Ct. Civ. R. 3. This interpretation of the interplay between CR 3 and 28 U.S.C. § 1446 has been followed in the Western District. *See Alderson v. Delta Air Lines, Inc.*, 2018 WL 5240811, at *2 (W.D. Wash. Oct. 22, 2018) (listing cases). Thus, the 30-day period to file a notice of removal can be triggered by service upon a defendant a copy of the summons and complaint. *See id.*; *Bush*, 425 F.3d at 686; *Rose*, 2013 WL 1703335, at *2.

**B. Discussion**

*1. Statutory Requirements*

The parties do not dispute this Court's removal jurisdiction under CAFA.[8] ECF No. 8 at 7-9, 11-14; ECF No. 1 at 3-6. To establish removal jurisdiction under CAFA, the removing party is required to demonstrate:

---

[8] Plaintiff alleges this action was removable on its face under 28 U.S.C. § 1332(a) as well. ECF No. 8 at 15-16. It was not. The Supreme Court has repeatedly held that § 1332(a) requires complete diversity. *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 375

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 22

(1) any member of the plaintiff class is a citizen of a state different from any defendant (a.k.a. minimal diversity);
(2) the aggregate amount in controversy exceeds $5 million;
(3) the defendant is not a State, State official or other governmental entity; and
(4) and the class will be comprised of more than 100 members.

28 U.S.C. § 1332(d)(2), (5).  Defendant has done so.

Defendant has established minimal diversity.  Defendant pleads that it is incorporated in Delaware, and its principal place of business is in California.  ECF No. 1 at 4, ECF No. 2 at 1.  Defendant relies on Plaintiff's statement that Glen Morgan, the class representative, "was at all times relevant to this Complaint a resident of Washington state."  ECF No. 1 at 4.  Accordingly, the minimal diversity requirement is met.  Defendant establishes in its notice that Twitter is not a government entity.  ECF No. 1 at 4, ECF No. 2 at 1.  Defendant acknowledges

_____

(1978)).  A district court does not have original diversity jurisdiction "[i]n a case with multiple plaintiffs and multiple defendants, [and] the presence in the action of a single plaintiff from the same State as a single defendant."  *Id*.  Plaintiff provides only the class representative's domicile.  Plaintiff did not provide the domiciles of each proposed class member, or inversely, plead that no proposed class member does not now reside in California or Delaware.  Without such information, Defendant could not be on notice that complete diversity could have existed.  Thus, the Complaint was not removable under § 1332(a) on its face.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 23

1   that the class represented by Morgan encompasses at least 10,000 members.  ECF

2   No. 1 at 5, ECF No. 2 at 2.  Finally, Defendant acknowledges that Plaintiff alleges

3   the aggregate amount in controversy exceeds $5 million as each successful

4   violation of the state statute is redressed by $5,000 in liquidated damages under

5   RCW 9.21A.140.  ECF No. 1 at 5.  Because Defendant has established that §

6   1332(d)'s requirements are met, it has met its burden in demonstrating the statutory

7   requirements under CAFA.

8       *2. Timeliness*

9       Plaintiff argues that Defendant's Notice of Removal, ECF No. 1, was

10  untimely.  ECF No. 8 at 9-10.  Plaintiff asserts that the thirty-day window provided

11  under 28 U.S.C. § 1446(a) began on April 1, 2022, the day Defendant was served

12  the Summons and Complaint pursuant to CR 3.  ECF No. 8 at 4-5, 9; ECF No. 18

13  at 7.  Defendant challenges Plaintiff's assertion that being served pursuant to CR 3

14  would have started the removability clock because Plaintiff did not file his

15  complaint in state court until May 3, 2022.  ECF No. at 18 at 7; *see* ECF 9-1 at 11.

16  Defendant's position regarding interplay between CR 3 and 28 U.S.C. § 1446 has

17  been rejected by the federal district courts in Washington.  *See*, *e.g.*, *Rose*, 2013

18  WL 1703335, at *2, *Alderson*, 2018 WL 5240811, at *2.

19      A cognizable civil action commences in Washington state court prior to a

20  Plaintiff's filing so long as CR 3 is complied with.  *Rose*, 2013 WL 1703335, at *2.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 24

1    Accordingly, the 30-day period to file a notice of removal is triggered by proper

2    service under CR 3. *Id.* Defendant's registered agent was served in California on

3    April 1, 2022. ECF No. 18 at 7. Defendant has not alleged that it made the

4    requisite written demand to Plaintiff. Thus, Plaintiff's service of his Summons and

5    Complaint commenced a cognizable state court action in Washington under CR 3

6    on April 1, 2022. Generally, the first 30-day clock for removal would have begun

7    on that day. However, the first 30-day clock begins only if the facts plead in the

8    Complaint were such that Defendant could ascertain the case's removability.[9]

9    _____

10   [9] In 2005, the Ninth Circuit joined the Second, Eighth, Tenth, Fifth, and Third

11   Circuits in holding "the ground for removal must be revealed affirmatively in the

12   initial pleading in order for the first thirty-day clock under § 1446(b) to begin." *Id.*

13   at 695. The defendant has no duty to investigate an "indeterminate" pleading:

14   > [T]he first thirty-day requirement is triggered by defendant's receipt of
     > an "initial pleading" that reveals a basis for removal. If no ground for
15   > removal is evident in that pleading, the case is "not removable" at that
     > stage.

16   *Id.* at 694. The question of whether the ground for removal was revealed

17   affirmatively in the pleading in *Harris* was straightforward. There, the plaintiff

18   plead to the state citizenship of most of the other parties. *Id.* at 691-92, 695-96.

19   However, the plaintiff only stated what state one particular party resided in 1972

20   and did not include that party's state citizenship at the time of filing in 2003. *Id.*

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 25

*Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694-95 (9th Cir. 2005).

      3.  *Removability Upon Service*

      Defendant disputes that the Complaint provided facts sufficient to determine removability on April 1, 2022.  ECF No. at 18 at 11-16.  Specifically, Twitter asserts that the Complaint was "silent" as to the number of proposed class members and the amount in controversy.  ECF No. 18 at 9.  The Complaint states that Plaintiff is bringing this class action on behalf of "[a]ll Washington persons who provided a telephone number to Twitter associated with a Twitter account prior to September 17, 2019."  ECF No. 1 at 44-45.  There is no estimated number of class members included in the Complaint, nor is there an estimated total amount in controversy.

      "[D]efendants need not make extrapolations or engage in guesswork" to

---

Later, the plaintiff abandoned his claim against that particular party (rendering each of the other parties' state citizenship known).  *Id.* at 691, 695-96.  Presumably, the plaintiff had already plead the $75,000 statutory amount in controversy, so the action became removable on its face when the claim against that particular party was abandoned, putting that defendant on notice of complete diversity.  *Id.* at 696.  When the defendant was put on notice of complete diversity, the 30-day window began.  *Id.*

1    determine if an action is removable.  *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707

2    F.3d 1136, 1140 (9th Cir. 2013) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261

3    F.3d 196, 206 (2d Cir. 2001)).  However, 28 U.S.C. § 1332(d) "requires a

4    defendant to apply a reasonable amount of intelligence in ascertaining

5    removability." *Id.*  Here, determining whether there are 100 members does not

6    conclude the jurisdictional inquiry in this case as the amount in controversy

7    requirement in this matter is dependent on the specific number of proposed class

8    members.  The statute that Plaintiff alleges Defendant violated provides for *at least*

9    $5,000 in liquidated damages for each successfully proven violation.  RCW

10   9.26A.140(4).  Given that each successfully adjudicated violation of this statute

11   would result in at least $5,000 in damages, there needs to be at least 1,001 class

12   members to meet the $5 million threshold under 28 U.S.C. § 1332(d).  The

13   question then becomes whether Defendant could ascertain whether there would be

14   1,001 class members from the face of the Complaint.

15       Plaintiff alleges that Defendant should have known there would be at least

16   1,001 class members.[10]  ECF No. 8 at 12-14.  However, the Ninth Circuit has

17

18   [10] Plaintiff contends that Defendant should be held to the recently rendered

19   standard from the Seventh Circuit in *Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234

20   (7th Cir. 2021).  ECF No. at 8 at 12.  There, the appellate court said, "If

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 27

1   "conclude[d] that notice of removability under § 1446(b) is determined through

2   examination of the four corners of the applicable pleadings, *not through subjective*

3   *knowledge* or a duty to make further inquiry." *Harris*, 425 F.3d at 694 (emphasis

4   added).  Plaintiff provides no argument as to how he provided Defendant notice

5   that the class was at least 1,001 members within the Complaint.  The Complaint

6   solely defines the proposed class as, "[a]ll Washington persons who provided a

7   telephone number to Twitter associated with a Twitter account prior to September

8   17, 2019."  ECF No. 1 at 44-45.  There is no estimate as to the number of

9   individuals that class would encompass.  This broad description of a proposed class

10

─────────────────────

11  removability turns on information about the defendant that the defendant itself

12  knows or can readily ascertain, the 30-day clock in § 1446(b)(1) begins to run.

13  This is so because '[w]hen the defendant has vital knowledge that the plaintiff may

14  lack, a burden that induces the removing party to come forward with the

15  information—so that the choice between state and federal court may be made

16  accurately—is much to be desired.'" *Railey*, 16 F.4th at 241 (alteration in original)

17  (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir.

18  2005)).  However, this non-binding authority directly contradicts the Ninth

19  Circuit's decision in *Harris* prohibiting courts to require a defendant to use

20  subjective knowledge, and the Court declines to apply such a requirement here.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 28

1  does not render the Complaint's removability readily apparent.  Thus, the 30-day

2  clock set forth in 28 U.S.C. § 1446(b)(1) was not triggered on April 1, 2022 and it

3  did not expire on May 2, 2022.

4      *4.  The Second 30-day Window Under 28 U.S.C. § 1446(b)(3)*

5      Because the Complaint was indeterminate—not readily removable on its

6  face—a second 30-day window of removability would begin if Plaintiff served

7  Defendant with an amended pleading or provided some other information from

8  which Defendant could first ascertain that the case was removable.  28 U.S.C. §

9  1446(b)(3).  The second 30-day window was not triggered prior to the filing of

10  Plaintiff's motion to remand or Defendant's notice of removal.  Defendant

11  contends that Plaintiff did not provide Defendant with any additional information

12  prior to filing its Motion to Remand.  ECF No. 18 at 15-16.  It was Defendant that

13  supplemented the Complaint by conducting an analysis of certain business

14  records—despite not being required to do so under *Harris*—and concluded that the

15  class likely encompassed more than 10,000 individuals, more than sufficient to

16  satisfy the CAFA requirements.  ECF No. 2 at 2.  Because Defendant

17  supplemented the Complaint to determine how many individuals may be in the

18  proposed class and Plaintiff did not amend the complaint or provide any other

19  information to Defendant, the 30-day window under 28 U.S.C. § 1446(b)(3) was

20  not triggered.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 29

1      *5.  Defendant Properly Removed*

2      A case may be removed under 28 U.S.C. § 1332(d) "'at any time, provided

3  that neither of the two thirty-day periods under [28 U.S.C.] § 1446(b)(1) and (b)(3)

4  has been triggered.'"  *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir.

5  2018) (quoting *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th

6  Cir. 2013)).  Because neither of the 30-day windows had been triggered before

7  May 19, 2022, Defendant was free to remove at any time before then.

8  Accordingly, Defendant's Notice of Removal was timely on May 19, 2022, and the

9  Court has jurisdiction over this matter.

10                          **JUDICIAL ESTOPPEL**

11     **A. Legal Standard**

12     "[J]udicial estoppel[] 'generally prevents a party from prevailing in one

13  phase of a case on an argument and then relying on a contradictory argument to

14  prevail in another phase.'"  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)

15  (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).  "It is an equitable

16  doctrine invoked not only to prevent a party from gaining an advantage by taking

17  inconsistent positions, but also because of general considerations of the orderly

18  administration of justice and regard for the dignity of judicial proceedings, and to

19  protect against a litigant playing fast and loose with the courts."  *Milton H. Greene*

20  *Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) (internal

quotation marks omitted).  The Supreme Court has identified three factors the

Court should assess to determine whether judicial estoppel is applicable in a case:

> First, a party's later position must be clearly inconsistent with its earlier
> position.  Second, courts regularly inquire whether the party has
> succeeded in persuading a court to accept that party's earlier position,
> so that judicial acceptance of an inconsistent position in a later
> proceeding would create the perception that either the first or the second
> court was misled . . . . A third consideration is whether the party seeking
> to assert an inconsistent position would derive an unfair advantage or
> impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750-51 (citations and quotations omitted).

**B. Discussion**

Plaintiff argues Defendant has taken a contradictory stance in this case to

that it took in *Gray v. Twitter, Inc.*, No. 20-cv-01389 (W.D. Wash. filed Sept. 21,

2020).[11]  ECF No. 31 at 4.  Specifically, Plaintiff asserts, "[Defendant] attempts to

---

[11] Plaintiff Morgan was a class member in *Gray v. Twitter*, which Gray filed in the

Western District of Washington in 2020.  *See Gray v. Twitter,* No. 20-cv-01389,

ECF No. 1 (Complaint).  In that matter, Defendant filed and the parties litigated a

Motion to Dismiss under Rule 12(b)(6).  *See Gray*, ECF Nos. 17, 19, 21.  A

magistrate judge issued a Report and Recommendation, *recommending* the matter

be dismissed with prejudice.  *See Gray*, ECF No. 22.  Gray objected to the Report

and Recommendation and filed a motion to certify questions to the Washington

Supreme Court.  *See Gray*, ECF Nos. 24, 25.  While that matter was pending,

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 31

1    have its cake and eat it too by arguing that today, the Court must accept

2    [Plaintiff's] legal theory, but tomorrow reject it in response to a Rule 12(b)(6)

3    Motion."  ECF No. 31 at 4, 6.  Essentially, Plaintiff argues Defendant's burden to

4    establish Article III standing is the same to successfully dismiss a claim under Rule

5    12(b)(6).  ECF No. 31 at 6-7.  Plaintiff has conflated two legal inquiries.  Whether

6    a claim can survive under Rule 12(b)(6) is an entirely separate inquiry from the

7    standing inquiry.  Indeed, "the threshold question of whether [a] plaintiff has

8    standing (and the court has jurisdiction) is distinct from the merits of his claim.

9    Rather, '[t]he jurisdictional question of standing precedes, and does not require,

10    analysis of the merits.'"  *Maya*, 658 F.3d at 1068 (quoting *Equity Lifestyle Props.,*

11    *Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)); *see*

12    *also Warth*, 422 U.S. at 500 (standing "in no way depends on the merits of the . . .

13    contention that particular conduct is illegal."); *Catholic League for Religious and*

14

_____

15    Plaintiff filed this matter in Spokane County Superior Court.  During the August

16    24 hearing, the Court asked Plaintiff's counsel about a potential inconsistency of

17    arguing that the Court in the Eastern District of Washington lacks Article III

18    standing despite filing the *Gray* matter in district court in the Western District of

19    Washington given the substantial similarity of the actions.  Following that hearing,

20    Gray voluntarily dismissed the case in the Western District. *See Gray*, ECF No. 36.

*C.R. v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true."). Accordingly, a district court can conclude that the requirements of Article III standing are satisfied prior to dismissing claims in the same case under Rule 12(b)(6). *See generally In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Eichenberger*, 876 F.3d 979.

Plaintiff further argues Defendant should be judicially estopped from making the alleged contradictory argument. ECF No. 31 at 12. Plaintiff argues that judicial estoppel is appliable here because "(1) Twitter has previously argued [in *Gray v. Twitter*] that there is no privacy interest in a cell phone number, while here it says there is; (2) Twitter contends it succeeded in persuading the court in *Gray v. Twitter* that its earlier position was correct; and (3) Twitter would gain an unfair advantage by securing access to its preferred forum." ECF No. 31 at 12.

First, Defendant did not argue that there is no privacy interest in a cell phone number in *Gray v. Twitter* for the purposes of a standing analysis. There, Defendant moved to dismiss on the basis that Plaintiff had inadequately plead facts to support her allegations, and Defendant denied disclosing contact information of users, and explained RCW 9.26A.140's purpose. *Gray*, ECF No. 17 at 8-12. More

1    importantly, Defendant argued that a telephone number does not fall within the

2    statute's definition of a telephone record and thereby causes Plaintiff's claim to fail

3    as a matter of law.  *Id.* at 14-26.  Thus, Plaintiff's first assertion is without merit.

4        Even if Defendant had asserted that there is not a privacy interest in a cell

5    phone number in *Gray*, Plaintiff's argument for judicial estoppel fails, because

6    Defendant has not argued that there is a privacy interest in a cell phone number

7    here.  Plaintiff's argument mischaracterizes Defendant's argument in its

8    Opposition to Plaintiff's Motion to Remand.  What Defendant argues is that the

9    cause of action Plaintiff has brought under RCW 9.26A.140 by virtue of the

10   Criminal Profiteering Act is closely analogous to the common law tort of

11   disclosure of private information such that Article III standing.  Defendant

12   acknowledges that Plaintiff alleges sufficient facts to confer Article III standing.

13   This is permitted by *Warth*, *Defendants of Wildlife*, and *National Wildlife*

14   *Federation*.  ECF No. 30 at 9.  Indeed, Defendant expressly states its intention to

15   make the same argument—not a contradictory argument—that it had previously in

16   *Gray*.  ECF No. 30 at 9, n.2 ("In fact, an individual's own telephone number is not

17   a 'telephone record' within the meaning of the Washington statute, *see Gray v.*

18   *Twitter, Inc.*, No. 22-cv-1389, ECF No. 22, at 13-18 (W.D. Wash. Mar. 17, 2021)).

19   Defendant's adherence to the legal standard while establishing Article III standing

20   does not materially contradict its prior position in *Gray*.  Thus, the first factor for

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 34

consideration in judicial estoppel is not present.

Judicial estoppel is also inappropriate in this matter because Gray voluntarily dismissed the case before the Report and Recommendation of the magistrate judge—which recommended dismissal with prejudice—was adopted or rejected by the district judge.  A final decision as to Defendant's arguments was not rendered.

## CONCLUSION

The Court finds Defendant has established Plaintiff's allegations are sufficiently plead such that Article III standing has been satisfied.  The Court also finds that Defendant has demonstrated the action is removeable under 28 U.S.C. § 1332(d) and Defendant's removal was timely.

Accordingly, **IT IS HEREBY ORDERED:**

**1.** Plaintiff's Motion to Remand, **ECF No. 8**, is **DENIED.**

    **a.** Defendant shall answer or otherwise respond to Plaintiff's First Amended Complaint, ECF No. 35, no later than 30 days from the date of this order.  *See* ECF No. 12 at 2.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 35

1        **IT IS SO ORDERED.**  The District Court Executive is directed to file

2   this order and provide copies to the parties.

3        DATED May 5, 2023.

4

5                              *s/Mary K. Dimke*
                              MARY K. DIMKE
                         UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER DENYING PLAINTIFF'S MOTION TO REMAND - 36