FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 22, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLEN MORGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER INC,<br><br>Defendant. | No. 2:22-cv-00122-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR REMAND AND MOTION TO CERTIFY, AND GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>**ECF Nos. 43, 64, 67** |

Before the Court is Defendant's Motion to Dismiss, ECF No. 43; Plaintiff's

Motion for Remand, ECF No. 64; and Plaintiff's Motion to Certify Questions to

the Washington Supreme Court, ECF No. 67. On November 15, 2023, the Court

head argument on the motions. Plaintiff was represented by Joel Ard and David

DeWolf. Defendant was represented by Thomas Fu and Aravind Swaminathan.

The Court has reviewed the record, heard from counsel, and is fully informed. The

Court denies Plaintiff's Motion to Remand, denies Plaintiff's Motion to Certify,

and grants Defendant's Motion to Dismiss.

ORDER - 1

**BACKGROUND**

Relevant to the instant matter is *Gray v. Twitter, Inc.*, a separate and earlier-filed—but otherwise identical—suit brought under RCW 9.26A.140 in the Western District of Washington.  *See* No. 20-CV-1389 (W.D. Wash. filed Sept. 21, 2020).  The plaintiff in that matter was represented by the same attorney of record and sought to certify a class of plaintiffs that would have included Plaintiff Morgan.  *See* Complaint at 8 ¶ 71, Motion to Stay at 1, *Gray*, No. 20-CV-1389 (W.D. Wash. 2020-22), ECF Nos. 1, 31.  The intertwined procedural histories of *Gray* and the instant case are set forth below.

On September 21, 2020, Plaintiff Gray filed a Class Action Complaint against Defendant Twitter, Inc., in the U.S. District Court for the Western District of Washington, asserting one cause of action under RCW 9.26A.140 and RCW 9A.82.100.  Complaint at 10 ¶ 83, *Gray*, No. 20-CV-1389 (W.D. Wash. Sept. 21, 2020), ECF No. 1.  Plaintiff Gray sought certification of a class of plaintiffs including "[a]ll Washington persons who provided a telephone number to Twitter prior to October 8, 2019."  *Id.* at 8 ¶ 71.

On December 7, 2020, Defendant moved to dismiss Plaintiff Gray's Complaint under Fed. R. Civ. P. 12(b)(6).  Motion to Dismiss, *Gray*, No. 20-CV-1389 (W.D. Wash. Dec. 7, 2020), ECF No. 17.  The motion was referred to a magistrate judge, who recommended dismissal on March 17, 2021.  Report &

Recommendation, *Gray*, No. 20-CV-1389 (W.D. Wash. Mar. 17, 2021), ECF No. 22.

On April 1, 2021, Plaintiff Gray filed a Motion to Certify Questions to the Washington Supreme Court. Motion to Certify, *Gray*, No. 20-CV-1389 (W.D. Wash. Apr. 1, 2021), ECF No. 24. Plaintiff Gray also filed objections to the magistrate judge's Report and Recommendation. Objections, *Gray*, No. 20-CV-1389 (W.D. Wash. Apr. 9, 2021), ECF No. 25. The matter was thereafter reassigned to a new presiding district judge. *See generally Gray*, No. 20-CV-1389 (W.D. Wash. 2021-22), ECF Nos. 29-31.

Plaintiff Morgan, represented by the same counsel as the plaintiff in *Gray*, filed the instant case in Spokane Superior Court on May 3, 2022. ECF No. 1 at 38-49.[1] Two days later, Plaintiff Gray moved to stay the case in the Western District of Washington, in light of Plaintiff Morgan's case, which she described as "[a] related lawsuit raising class claims under the same legal theory." Motion to Stay at 1, *Gray*, No. 20-CV-1389 (W.D. Wash. May 5, 2022), ECF No. 31. Plaintiff Gray

---

[1] Plaintiff's counsel has stated that Morgan is a resident of Thurston County. ECF No. 40 at 8. The basis for venue in this District (and, for that matter, in Spokane County) is unclear but has yet to be litigated.

ORDER - 3

stated that a stay was appropriate because her claims "appear[ed] likely to be fully and finally adjudicated in state court." *Id.*

On May 19, 2022, Defendant removed Plaintiff Morgan's case to this Court, invoking federal jurisdiction under the Class Action Fairness Act. ECF No. 1.[2] Plaintiff Morgan moved to remand on May 26, 2022, alleging that the Notice of Removal was untimely. ECF No. 8. This motion underwent two rounds of briefing, after Plaintiff Morgan challenged Article III standing for the first time in his Reply brief. *See* ECF Nos. 29-31, 33.

On July 21, 2022, the court in the Western District of Washington denied Plaintiff Gray's Motion to Stay, citing the first-to-file rule, the significant resources that had already been expended in the litigation, and the lack of authority supporting Plaintiff Gray's "contention that it would be preferable for a state court instead of a federal court to adjudicate her claims." Order, *Gray*, No. 20-CV-1389 (W.D. Wash. July 21, 2022), ECF No. 35.[3]

---

[2] Defendant also moved to stay this case pending the proceedings in *Gray*, but this motion was mooted by the voluntary dismissal in *Gray*. ECF Nos. 5, 28.

[3] The Court notes that Plaintiff Gray originally filed her case in federal court and therefore chose the federal forum.

ORDER - 4

On August 24, 2022, the Court conducted a hearing on Plaintiff Morgan's Motion to Remand.  ECF No. 26.  At that hearing, the Court noted the "inconsistency" of Plaintiff's counsel's argument that the district court for the Eastern District of Washington lacked Article III standing, when counsel had previously filed the *Gray* case, containing the exact same claims, in the district court for the Western District of Washington and did not dismiss it after the Supreme Court decided *TransUnion*, the decision which they cited for the proposition that the Court in the Eastern District of Washington lacked standing to consider the claim.  ECF No. 39 at 32 n.11; ECF No. 20 at 4-5.  Six days later, Plaintiff Gray filed a Notice of Voluntary Dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i).  Notice, *Gray*, No. 20-CV-1389 (W.D. Wash. Aug. 30, 2022), ECF No. 36.

In September and October 2022, Plaintiff Morgan and Defendant submitted supplemental briefing on the Article III issues.  ECF Nos. 30-31, 33.  In Plaintiff Morgan's sur-response, he contended Defendant was "ask[ing] the Court to accept [Plaintiff] Morgan's ***legal theory*** as correct for purposes of evaluating Art. III standing at remand, thereby allowing [Defendant] promptly to ask this Court to

find Morgan's legal theory ***incorrect*** for purposes of Rule 12(b)(6) moments later, on a motion to dismiss."  ECF No. 31 at 6.[4]

On February 21, 2023, and while the Motion to Remand was still pending, Plaintiff Morgan filed the First Amended Complaint.[5]  ECF No. 35.  More than 21 days had elapsed since Plaintiff Morgan served Defendant with the original Complaint, so he was not permitted to amend as a matter of course under Fed. R. Civ. P. 15(a)(1)(B).  *See* ECF No. 1.  Plaintiff Morgan did not seek leave from the

---

[4] There was no Rule 12(b)(6) motion pending at this time—Morgan appeared to be predicting that Defendant would file a Rule 12(b)(6) motion in the future based on Defendant's Rule 12(b)(6) motion in *Gray*.

[5] Plaintiff's counsel reportedly served the First Amended Complaint upon Defendant "two and a half months before" filing it and "had discussions with [Defendant] about it beginning December 12, 2022."  ECF No. 40 at 5.  This would have been shortly after the close of supplemental briefing on Plaintiff Morgan's Motion to Remand, in which he claimed that Defendant would be filing a Rule 12(b)(6) motion to dismiss "moments later."  *See* ECF No. 31 at 6.  In other words, it seems that Plaintiff Morgan drafted the First Amended Complaint in anticipation of an unfavorable ruling on the Motion to Remand and in preparation for the Rule 12(b)(6) motion that Defendant would likely file thereafter.

Court to amend, nor did he indicate that he had obtained Defendant's written consent, as required by Fed. R. Civ. P. 15(a)(2).  As the Court later noted, the First Amended Complaint "appears to have run afoul of Fed. R. Civ. P. 15," but because Defendant did not object to the amendment, "the Court took no action" at that time.  ECF No. 63 at 5-6.

The First Amended Complaint did not alter the "Cause of Action" statement in the original Complaint.  *Compare* ECF No. 1 at 46 ¶¶ 81-84 *with* ECF No. 35 at 26 ¶¶ 156-159.  Rather, the amendments primarily supplemented or revised the factual allegations underlying that cause of action.  *Compare* ECF No. 1 at 38-47 *with* ECF No. 35.  In particular, the First Amended Complaint added sections describing Defendant's 2011 and 2020-21 settlements with the Federal Trade Commission; Defendant's public statement to users on October 8, 2019; and a whistleblower's allegations against Defendant in 2022 disclosures to Congress.  *See* ECF No. 35 at 6-19.  The First Amended Complaint also supplemented the allegations relating to RCW 9.26A.140 and moved the Subsection (1)(a) allegations into a separate heading, apart from the Subsection (1)(b) allegations, although continuing to assert a "sole Count."  *See* ECF No. 35 at 20-21, 26.

On May 5, 2023, the Court ruled that Plaintiff Morgan had Article III standing.  ECF No. 39.  In particular, the Court found that Plaintiff Morgan's alleged harm from "Defendant's alleged unlawful procurement or sale of his cell

ORDER - 7

phone number" was "closely analogous to the common law tort of disclosure of private information" and "therefore "sufficient to establish an injury in fact" under Article III. ECF No. 39 at 16. The Court further found that Defendant's removal was timely, denied remand, and ordered Defendant to file an Answer or Motion to Dismiss within 30 days. ECF No. 39.[6]

Defendant filed the instant Motion to Dismiss on June 2, 2023. ECF No. 43. Ten days later, Plaintiff Morgan filed a Motion for Leave to File Second Amended Complaint. ECF No. 47. The proposed amendments would have deleted various allegations from the First Amended Complaint, including the allegations that Defendant sold Plaintiff Morgan's telephone record and the Criminal Profiteering Act grounds for a private cause of action, which the Court had cited in finding Article III standing.[7] *See* ECF No. 47-1; ECF No. 54 at 4. The Court stayed the

---

[6] During that 30-day period, Plaintiff Morgan moved for issuance of a scheduling order, which the Court denied given the pending motions. ECF Nos. 41, 52.

[7] Only one section of the proposed amendments added, rather than deleted, substantive allegations from the First Amended Complaint, and these additions explained that Plaintiff Morgan's private cause of action stemmed from RCW 9.26A.140(4), not the Criminal Profiteering Act sections. *See* ECF No. 47-1 at 5.

ORDER - 8

briefing on the Motion to Dismiss pending resolution of Plaintiff Morgan's motion. ECF No. 51.

On August 31, 2023, the Court denied Plaintiff Morgan leave to file a second amended complaint, in light of (1) his previous amendment; (2) the futility of amendment, where he only intended to remove, not add, substantive allegations; (3) the prejudice Defendant would suffer if litigation was reset again; and (4) the undue delay that had already resulted from Plaintiff Morgan's counsel's failure to investigate the factual basis for the claim at an earlier time.  ECF No. 63.  At that time, the Court declined to find that Morgan had intentionally acted to deceive, harass, mislead, delay, or disrupt the proceedings, while noting "the seemingly inconsistent positions" taken during the litigation thus far and the "unusual timing" of Plaintiff Morgan's motion to amend "after an inexplicable delay of investigation and just days after Defendant sought dismissal as a matter of law."  ECF No. 63 at 12.  The Court also reset the stayed briefing deadlines relating to Defendant's Motion to Dismiss.  *Id.*

Thereafter, Plaintiff Morgan filed the instant Motion to Remand on September 5, 2023, and the instant Motion to Certify on September 26, 2023.  ECF Nos. 64, 67.

## PLAINTIFF'S MOTION TO REMAND

Plaintiff Morgan argues that the Court must remand this case to state court

1    because there is "no longer a case or controversy with respect to the claim giving

2    rise to federal jurisdiction."  ECF No. 64 at 2.  Because these arguments raise

3    Article III jurisdictional issues, the Court addresses this motion first.

4    **A. Legal Standard**

5    "Federal courts are courts of limited jurisdiction.  They possess only that

6    power authorized by Constitution and statute, which is not to be expanded by

7    judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

8    (1994) (citations omitted).  "If at any time before final judgment it appears that the

9    district court lacks subject matter jurisdiction, the case shall be remanded."  28

10   U.S.C. § 1447(c).

11   **B. Discussion**

12   Plaintiff Morgan argues that he has two separate claims, that one claim

13   should be dismissed as moot because he has abandoned it, and that the Court has

14   previously found that the remaining claim does not present an Article III injury-in-

15   fact.  ECF No. 64 at 3-4.  Defendant responds that Plaintiff Morgan has only

16   asserted one claim and that Article III standing is unaffected by Plaintiff Morgan's

17   abandonment of part of that claim.  ECF No. 68 at 4-5.

18   These arguments present the following questions: whether Plaintiff Morgan

19   has raised two separate claims under RCW 9.26A.140(1)(a) and (1)(b); if so, what

20   the proper disposition is for his "abandoned" Subsection (1)(a) claim; and finally,

1    whether Plaintiff Morgan has Article III standing for his Subsection (1)(b) claim.

2        *1. Number of Claims in the First Amended Complaint*

3        Defendant argues that, until now, Plaintiff Morgan has maintained that he

4    has only one claim under RCW 9.26A.140.  ECF No. 68 at 6-7.  Defendant is

5    largely correct, although Plaintiff Morgan has been inconsistent.  *See* ECF No. 1 at

6    46 ¶ 82 ("This **sole Count** is brought pursuant to RCW 9.26A.140 . . ."); ECF No.

7    8 at 11, 15 ("This Washington state law **claim** . . . Twitter acknowledges that the

8    Complaint alleges **a cause of action** . . ."); ECF No. 20 at 13 ("this Court's subject

9    matter jurisdiction over Plaintiff's **claims**"); ECF No. 31 at 9 ("whether the nature

10   and source of the **claim** asserted create a statutory injury"); ECF No. 35 at 26 ¶ 156

11   ("This **sole Count** is brought pursuant to RCW 9.26A.140 . . ."); ECF No. 41 at 3

12   ("[*Gray v. Twitter*] rais[ed] essentially identical **claims** as the initial Complaint

13   here"); ECF No. 47 at 1-2, 3 ("The proposed SAC further clarifies that Morgan's

14   **single cause of action** arises exclusively under RCW 9.26A.140 . . . Morgan's

15   **claims**"); ECF No. 47-2 at 23 ¶ 128 ("This **sole Count** is brought pursuant to

16   RCW 9.26A.140 . . ."); ECF No. 50 at 4-5 ("the **claims** of the Complaint . . . these

17   meritorious **claims**"); ECF No. 56 at 5 ("Morgan's goal of removing the **claim**

18   under RCW 9.26A.140**(1)(a)**") (emphases added).

19       At the hearing, the Court inquired how the "sole Count" language in the

20   original and First Amended Complaints indicated that Plaintiff Morgan had two

separate claims—Plaintiff's counsel responded that there were "two alleged bases for the count." ECF No. 75 at 7. That explanation sheds little light on how to reconcile Plaintiff Morgan's varying assertions of one "Count,"[8] one "cause of action,"[9] one "claim,"[10] and multiple "claims," which he now asserts for the purposes of this motion as quoted above.

---

[8] *Count*, *Black's Law Dictionary* (11th ed. 2019) ("2. *Civil procedure.* In a complaint or similar pleading, the statement of a distinct claim.")

[9] *Cause of Action*, *Black's Law Dictionary* (11th ed. 2019) ("1. A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; CLAIM (4) . . . 2. A legal theory of a lawsuit . . .").

[10] *Claim, Black's Law Dictionary* (11th ed. 2019) ("1. A statement that something yet to be proved is true . . . 2. The assertion of an existing right . . . A demand for money, property, or a legal remedy to which one asserts a right; esp. the part of a complaint in a civil action specifying what relief the plaintiff asks for . . . 4. An interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing; CAUSE OF ACTION (1) . . .")

ORDER - 12

1      Plaintiff Morgan's change of position raises potential issues related to

2  judicial estoppel and deficient notice pleading.  However, for the purposes of these

3  motions, the Court will construe the First Amended Complaint as stating two

4  separate claims, not one, in the interest of efficiently resolving the pending

5  motions.

6      *2.  Status of Plaintiff Morgan's RCW 9.26A.140(1)(a) Claim*

7      Plaintiff Morgan claims to have "abandoned" his Subsection (1)(a) claim,

8  such that it is now "moot."  ECF No. 64 at 4-6; *see also* ECF No. 65 at 4 n.2.

9  Defendant responds that Plaintiff Morgan's concession that his Subsection (1)(a)

10  argument is meritless does not affect his Article III standing and should be

11  resolved by a decision on the merits.  ECF No. 68 at 5-6.

12      a.  Implicit Motion to Reconsider

13      This is not the first time that Plaintiff's counsel has sought to "abandon" the

14  Subsection (1)(a) allegations.  In his Motion for Leave to File Second Amended

15  Complaint, he sought to strike the Subsection (1)(a) basis from the "single cause of

16  action."  ECF No. 47 at 1-2; ECF No. 47-1 at 22-24.  To explain this request,

17  Plaintiff's counsel submitted a declaration stating he had conducted further

18  investigation in late May and early June 2023 and concluded that the Subsection

19  140(1)(a) allegations "were not likely to have evidentiary support."  ECF No. 57.

20  The only investigative act that Plaintiff's counsel specifies is that, in "late May

2023," he "described the general outlines of the factual allegations in [this case] to a group of friends and acquaintances."  ECF No. 57 at 1 ¶ 1.  A person in this group "who was familiar with online advertising advised [counsel] that in his experience, no advertiser" ever acted in the way that was "alleged in the Complaint and [First Amended Complaint]."  *Id.* at 1 ¶ 2.  He reportedly concluded his unspecified follow-up investigation within a few weeks, by June 6, 2023.  *Id.* at 2 ¶ 6.  This strongly suggests that Plaintiff's counsel had not consulted with anyone "familiar with online advertising" before alleging Defendant had violated RCW 9.26A.140(1)(a) in April 2022, nor in the prior years of pending litigation in *Gray*.[11]  *See* Complaint at 7-8, *Gray*, No. 20-CV-1389 (W.D. Wash. Sept. 21, 2020), ECF No. 1.

Moreover, the timing and circumstances of that "investigation" are illustrative.  The Court had recently denied Plaintiff Morgan's first Motion to Remand on May 5, 2023.  ECF No. 39.  According to an email filed by Plaintiff's counsel, he was made aware on May 22, 2023, that Defendant intended to file a Rule 12(b) motion.  ECF No. 42-2 at 2.  The next day, Plaintiff's counsel moved

---

[11] The Court previously noted that this delayed investigation was not consistent with Plaintiff's counsel's obligations under Washington Superior Court Rule 11 and Fed. R. Civ. P. 11.  ECF No. 63 at 10.

ORDER - 14

for issuance of a scheduling order, arguing that discovery should not be delayed by the anticipated Rule 12(b) litigation.[12]  ECF No. 41 at 4-5.  The discussion with "friends and acquaintances" in "late May 2023" would have occurred around this same time.  *See* ECF No. 57 at 1 ¶ 1.  In other words, Plaintiff's counsel was apparently on notice that his Subsection (1)(a) allegations might have been meritless, but he did not bring that to the Court's attention while urging the Court to order early discovery.  And despite his professed concern about this delay, Plaintiff Morgan moved for leave to file the Second Amended Complaint a few weeks later, adding to the list of issues that needed to be addressed before discovery could commence.  ECF No. 47.

---

[12] In the motion, Plaintiff Morgan stated that "[t]hirty-two months of unintended, unanticipated, and as-yet unended delays have prevented Plaintiff from serving a single discovery request."  ECF No. 41 at 4-5, 7.  The Court notes that the majority of the delay of which Plaintiff Morgan complained is the result of Plaintiff's counsel's litigation tactics in *Gray*, and then the litigation tactics in this matter— for example, the further briefing necessitated on the Motion to Remand caused by Plaintiff Morgan's untimely Article III challenge and moving to amend after a motion to dismiss is filed.  *See* ECF No. 41 at 4-5, 7.

ORDER - 15

1       Ultimately, the Court denied Plaintiff Morgan leave to amend—thereby

2  denying Plaintiff Morgan's request to strike his Subsection (1)(a) claim.  ECF No.

3  63.  Among many other reasons, the Court found that Defendant would be

4  prejudiced by the lost opportunity to have the Subsection (1)(a) claim addressed on

5  the merits.  ECF No. 63 at 8.  The Court also found that amendment would cause

6  undue delay, given that Plaintiff's counsel had "certified that the claims advanced

7  [in the Complaints] were grounded in fact" at the time he filed them in 2020

8  (*Gray*), 2022 (ECF No. 1 at 38-49), and 2023 (ECF No. 35), but was now

9  contending that the Subsection (1)(a) claim had been "discredited within a few

10  conversations undertaken within a few weeks."  ECF No. 63 at 10.  Additionally,

11  Plaintiff Morgan's Motion to Amend had already delayed resolution of

12  Defendant's earlier-filed Motion to Dismiss, and if amendment were permitted,

13  Defendant would have been forced to file an amended motion to dismiss.  ECF No.

14  63 at 8.

15       As explained above, Plaintiff Morgan is currently raising an argument the

16  Court has already rejected—that he should be allowed to strike the Subsection

17  (1)(a) allegations from the First Amended Complaint—albeit under a different

18  procedural label.  The heart of Plaintiff Morgan's argument is that the Court must

19  reconsider—and indeed, must reverse—its prior denial of leave to amend simply

20

1  because he has reframed his argument as abandonment resulting in mootness, not

2  amendment.

3         But he does not argue that the controlling law or factual circumstances have

4  changed since he requested leave to amend in June, or that the Court's Order

5  denying leave to amend contained any manifest legal error.  *See Sch. Dist. No. 1J,*

6  *Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (listing the

7  situations where reconsideration may be appropriate).  Nor does he explain why he

8  did not raise his mootness argument earlier.  There is no intelligible reason why

9  reconsideration would be appropriate, let alone required.

10        Likely, Plaintiff Morgan did not allege mootness in the earlier briefing

11  because he was, at that time, still contending that he had only a "single cause of

12  action aris[ing] exclusively under RCW 9.26A.140" as a whole.  *See* ECF No. 47

13  at 1-2.  But a motion to reconsider "may *not* be used to raise arguments . . . for the

14  first time when they could reasonably have been raised earlier in the litigation."

15  *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis

16  in original).  This includes arguments which the party made the "strategic choice

17  not to include" in the original motion.  *See Berman v. Freedom Fin. Network, LLC*,

18  No. 18-CV-1060, 2020 WL 6684838, at *1 n.1 (N.D. Cal. Nov. 12, 2020).

19        The Court will nevertheless address the mootness argument because it

20  implicates Article III jurisdiction.  But the above demonstrates that Plaintiff's

ORDER - 17

1    counsel continues to take "inconsistent positions" on Article III justiciability,

2    casting further doubt on whether he is acting in good faith.  *See* ECF No. 63 at 12.

3           b.  Mootness

4           A party abandons an issue when it has a full and fair opportunity to ventilate

5    its views with respect to an issue and instead chooses a position that removes the

6    issue from the case."  *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th

7    Cir. 2009) (citation and quotation marks omitted).  A claim that a plaintiff

8    abandons in its response to a dispositive motion may be resolved by an adverse

9    ruling on the merits.  *See id.* (affirming the district court's grant of summary

10   judgment against the plaintiff on claims he failed to address in his summary

11   judgment briefing); *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 825-27

12   (9th Cir. 2000) (affirming the district court's grant of summary judgments on

13   potential disputes of material fact "because Appellants either abandoned or failed

14   to dispute the possible factual issues").  A similar concept is reflected in Fed. R.

15   Civ. P. 41(b), which permits dismissal of a claim with prejudice based on a

16   plaintiff's failure to prosecute or to comply with the rules of procedure.

17          Conversely, a claim "becomes moot *only* when it is impossible for a court to

18   grant any effectual relief whatever to the prevailing party."  *Chafin v. Chafin*, 568

19   U.S. 165, 172 (2013) (citations omitted) (emphasis added).  "An argument that an

20   action is moot because the plaintiff is not entitled to the requested relief, for

example, is no more than an argument on the merits that should be decided on the merits."[13]  Wright & Miller, 13B Fed. Prac. & Proc. Juris. § 3533.1 (3d ed. 2023); *see also Powell v. McCormack*, 395 U.S. 486, 500 (1969); *Ariz. State Legislature v. Ariz. Indep. Redist. Comm'n*, 576 U.S. 787, 800 (2015) ("[O]ne must not 'confuse weakness on the merits with absence of Article III standing.'") (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)) (alteration omitted); *Citizens for Quality Educ. San Diego v. Barrera*, 333 F. Supp. 3d 1003, 1025 (S.D. Cal. 2018) ("When assessing mootness, a court should not conflate whether a plaintiff retains an interest in a case with the distinct issue of whether the plaintiff's claims are meritorious.") (citation omitted).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Chafin*, 568 U.S. at 172.  Moreover, "[t]here is no need to manipulate" the

---

[13] Ordinarily, it is the defendant who argues that a plaintiff's non-entitlement to relief renders the plaintiff's claim moot.  *See, e.g., Powell v. McCormack*, 395 U.S. 486, 500 (1969).  However, the same principle applies when the plaintiff claims mootness for strategic reasons.  *See Chafin*, 568 U.S. at 175-76 (rejecting the plaintiff's argument that the defendant's appeal of an adverse child custody decision became moot when the plaintiff transported the child outside the court's territorial jurisdiction).

constitutional doctrine of mootness, particularly where such manipulation could be used by parties for unfair purposes. *See id.* at 178 (noting that "[a] mootness holding here might also encourage . . . prevailing parents to try to flee the jurisdiction to moot the case" on appeal).

Plaintiff Morgan defines abandonment as '***deliberately*** declin[ing] to pursue an argument by taking a position that ***conceded*** the argument or removed it from the case.'" ECF No. 70 at 6 (quoting *Walker v. Beard*, 789 F.3d 1125, 1133 (9th Cir. 2015) (emphases added)).[14]  Plaintiff Morgan says he has "taken a position that concedes" that Defendant did not violate RCW 9.26A.140(1)(a).  ECF No. 64 at 4.  He further repeats this claim of abandonment in his response to Defendant's

---

[14] In *Walker*, the Ninth Circuit considered its "abandonment jurisprudence" but declined to apply it there.  789 F.3d at 1133.  But the court cited three cases reflecting that jurisprudence, only one of which concerned a claim that was abandoned in the pretrial phase.  In that case, *Ramirez*, 560 F.3d at 1026, the Ninth Circuit affirmed summary judgment on a claim which the plaintiff had "abandoned" by failing to address in his summary judgment briefing.  In other words, Plaintiff Morgan's cited case law on "abandonment" recognizes that such claims are properly resolved by an adverse decision on a dispositive motion, not mooted.

1   Motion to Dismiss, to explain why he "does not address those moot arguments."

2   ECF No. 65 at 4 n.2.

3          If Plaintiff's counsel now doubts whether Plaintiff Morgan will prevail on

4   the merits for that claim, that is solely the result of counsel's failure to make a

5   reasonable prefiling investigation.  By his signature, he repeatedly certified that his

6   Subsection (1)(a) allegations were well grounded in fact.  ECF No. 63 at 10 (citing

7   *Christian v. Mattel*, 286 F.3d 1118, 1127 (9th Cir. 2002); Fed. R. Civ. P. 11; Wash.

8   Super. Ct. Civ. R. 11).  Because of that certification, he has subjected Defendant to

9   more than three years of litigation across two separate courts on that Subsection

10  (1)(a) claim.  His sudden change of heart on that claim came less than a month

11  after the Court denied his first Motion to Remand.  *See* ECF Nos. 39, 47.

12  Plaintiff's counsel must choose between two paths: either admit he failed to meet

13  his Rule 11 obligations when he signed the *Gray* complaint and the three

14  complaints filed in this case, or the case is not moot.

15         At any rate, the Subsection (1)(a) claim is not moot.  Both Plaintiff Morgan

16  and Defendant retain a concrete interest, however small, in the outcome of the

17  Section (1)(a) claim.  *See Chafin*, 568 U.S. at 172.  The argument raised by

18  Plaintiff's counsel "confuses mootness with whether [Plaintiff Morgan] has

19  established a right to recover."  *See id.* at 174.  "His prospects of success are . . .

20  not pertinent to the mootness inquiry."  *See id.*  Moreover, a mootness holding here

1    might encourage plaintiffs to claim "abandonment" and mootness as a ploy to

2    avoid an imminent, adverse ruling on the merits.  *See id.* at 179.  That is arguably

3    what is occurring here.

4            Moreover, several of the cases Plaintiff Morgan cites in relation to

5    "abandonment" resulted in decisions on the merits.  In *Mesecher v. Lowes*

6    *Companies, Inc.*, No. 17-CV-299, 2018 WL 793613 (E.D. Wash. Feb. 8, 2018), the

7    court found that the plaintiffs had effectively abandoned certain claims by failing

8    to defend them in response to the defendants' Rule 12(b)(6) motion to dismiss, and

9    the court ordered those claims dismissed with prejudice after concluding that

10   amendment would be futile.  In *McMath*, 206 F.3d at 825-27 and *Ramirez*, 560

11   F.3d at 1026, the Ninth Circuit affirmed summary judgment against the appellants

12   on claims the appellants were found to have abandoned.  Plaintiff Morgan fails to

13   cite any cases supporting his argument that a plaintiff's pretrial abandonment of a

14   claim requires the district court to dismiss that claim as moot.

15           Because the Court finds that the Subsection (1)(a) claim is not moot,

16   Plaintiff Morgan's affirmative abandonment of that claim does not impact the

17   Court's prior finding of Article III standing, per its prior Order, ECF No. 39, to

18   consider Defendant's Motion to Dismiss.

19           *3.  Article III Standing*

20           Besides Plaintiff Morgan's now-rejected mootness argument, there is no

other new circumstance that might draw the Court's previous finding of Article III standing into doubt.  However, Plaintiff Morgan argues that he does not have standing for his Subsection (1)(b) claim, contending that "[t]his Court has previously ruled that [his Subsection (1)(b) claim] fails to allege the type of injury that is required for subject matter jurisdiction."  ECF No. 64 at 3 (citing ECF No. 39 at 12).  Defendant does not directly respond to this argument, instead focusing on Plaintiff Morgan's previous representations that there is only one claim, not two.  ECF No. 68 at 6-7.

At the time of the Court's previous Order, Plaintiff Morgan was still contending that he had only one claim, not two.  *See* ECF No. 1 at 46 ¶ 82; ECF No. 8 at 11, 15; ECF No. 35 at 26 ¶ 157.[15]  As a result, the Court determined the Article III issue based on Plaintiff Morgan's representations that there was a single,

_____

[15] Plaintiff Morgan did not file the First Amended Complaint until after all briefing, both initial and supplemental, on the Motion to Remand had concluded.  However, the First Amended Complaint contained a "Cause of Action" section that was identical to the "Cause of Action" section in the original Complaint, except for adjustments to the paragraph numbers.  *See* ECF No. 1 at 46 ¶¶ 81-84; ECF No. 35 at 26 ¶¶ 156-159.  In other words, the First Amended Complaint reaffirmed Plaintiff Morgan's assertion of a "sole" RCW 9.26A.140 claim.

ORDER - 23

1    unified RCW 9.26A.140 claim of "unauthorized sale or procurement of telephone

2    records."  *See* ECF No. 39 at 5 n.4, 6, 10-15.  Defendant did argue in its brief that

3    Plaintiff Morgan's Subsection (1)(b) allegations were analogous to the tort of

4    intrusion upon seclusion, while his Subsection (1)(a) allegations were analogous to

5    the tort of disclosure of private information.  ECF No. 30 at 12-13.  But the Court

6    did not adopt this distinction.  Instead, the Court repeatedly referred to a single

7    claim or cause of action under RCW 9.26A.140, as Plaintiff Morgan had done in

8    the original Complaint and First Amended Complaint.  *See* ECF No. 39 at 5-6, 10,

9    11-12, 13, 14, 17, 34.  The Court did not specifically distinguish between

10   Subsections (1)(a) or (1)(b), let alone consider them as separate claims with

11   different Article III analyses.

12       Plaintiff Morgan selectively quotes from the Order to argue that the Court

13   did distinguish between the Subsection (1)(a) and (1)(b) claims:

14             Instead, the Order found that Twitter carried its burden to
             show a suitable Art. III concrete harm in "Defendant's
15             argument that a violation of RCW 9.26.140 is closely
             analogous to the common law tort of disclosure of private
16             information.  *Id.* at 13:1-3.  The Court identified fact
             allegations in the Complaint related to that harm as
17             identified by Twitter: 'Plaintiff alleges that Defendant
             disseminated the private information associated with his
18             and other Twitter users' cell phone number, which include
             the numbers themselves and metadata contained within ***to
19             third-party advertisers."***  Order at 13:3-6 (emphasis
             added).  The Court found that the fact allegations in the
20             Complaint (and [First Amended Complaint]) concerning
             ***dissemination*** of phone number information was "similar

to the plaintiff's allegation in *Tailford*;" *id.* at 13:7, and akin to the fact allegations that sufficed for Art. III standing in *Eichenberger* . . . The Order held that "RCW 9.26A.140 codif[ies] the substantive privacy interests in context-specific situations regarding the ***unauthorized dissemination or sale*** of telephone records." *Id.* at 14:18-20 (emphasis added).  "The Order found that "[b]ecause RCW 9.26A.140 codifies a substantive right involving privacy in certain telephone records, the Court finds that the cause of action available under RCW 9.26A.140 Is analogous to the federally recognized injury of disclosure of private information and it has a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts as required by *Transunion*." *Id.* at 14:20-15:5.

ECF No. 64 at 8 (emphases in Plaintiff Morgan's brief).  Plaintiff Morgan appears to be relying on those instances in the Order where the Court referenced the "sale" allegations without expressly referencing the "procurement" allegations.  He overlooks those more-frequent instances where the Court did reference both together in relation to RCW 9.26A.140.[16]  To the extent the Order language did not

---

[16] ECF No. 39 at 5 ("Specifically, Plaintiff alleges that Defendant unlawfully ***obtained*** his and other users' cell phone numbers . . . and then sold that information . . ."), 5 n.4 ("the unauthorized sale or ***procurement*** of telephone records in violation of RCW 9.26A.140"), 10 ("Plaintiff's allegation that Defendant ***procured*** or sold his telephone records without authorization falls under RCW 9.26A.140."); 15 ("Plaintiff alleges that Defendant unlawfully ***obtained*** the

1    always say "procure" or "obtain" when it paraphrased Plaintiff Morgan's

2    allegations, it nevertheless referred to RCW 9.26A.140 as a whole, based on his

3    representations that he was bringing a single claim under that statute as a whole.

4         Further, if the Court had, in fact, found (1) two distinct claims and (2) a lack

5    of Article III standing over one of those claims, immediate dismissal or remand of

6    the non-justiciable claim would have been required at that moment.  *See Davis v.*

7    *Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("Standing is not dispensed in

8    gross.  Rather, a plaintiff must demonstrate standing for each claim he seeks to

9    press . . .") (citations and quotation marks omitted).

10        Regardless, the Court finds Article III standing for the Subsection (1)(b)

11   claim under the same reasoning in its previous Order.  In that Order, the Court

12   found an injury-in-fact by comparing RCW 9.26A.140 to the substantive right

13   against disclosure of private information, traditionally recognized by the common

14   law and statutorily recognized in the federal Telephone Records and Privacy

15   Protection Act of 2006 ("TRPPA"), 120 Stat. 3568.  ECF No. 39 at 14-15.  The

16   TRPPA created statutory offenses that are clear analogues to RCW

17

18   cell phone number . . . and then sold that phone number . . . "), 16 ("Plaintiff

19   alleges he was harmed by Defendant's alleged unlawful ***procurement*** or sale of his

20   cell phone number . . .").

9.26A.140(1)(a) and (1)(b).  Where Subsection (1)(b) prohibits the use of

fraudulent, deceptive, or false means to obtain telephone records, 18 U.S.C. §

1039(a)(1)-(2) prohibits the use of false or fraudulent statements to obtain

confidential phone records.  Similarly, where Subsection (1)(a) prohibits the

unauthorized sale of telephone records, 18 U.S.C. § 1039(b) prohibits the sale or

transfer of confidential phone records information.

Moreover, the Ninth Circuit has recently addressed this issue, in relation to a

claim brought under the Washington Privacy Act:

> With respect to constitutional injury-in-fact, the relevant
> law is settled.  A statute that codifies a common law
> privacy right "gives rise to a concrete injury sufficient to
> confer standing."  And this court has consistently found
> that "violations of the right to privacy have long been
> actionable at common law."

*Jones v. Ford Motor Co.*, _ F.4th _, 2023 WL 7097365, at *2 (9th Cir. Oct. 27,

2023) (citations and alteration omitted).[17]  Specifically, the court found a sufficient

---

[17] This case was decided after the briefing was complete.  The Court identified it in

its independent research.  The Court observes that Plaintiff Morgan's counsel was

also the plaintiff's counsel of record in *Jones*.  In the initial argument on the

Motion to Remand, Plaintiff's counsel did not bring *Jones* to the Court's attention.

Defendant's counsel was the first to raise *Jones* in their counterargument.  In

rebuttal argument, Plaintiff Morgan's counsel argued that *Jones* could be

ORDER - 27

1  Article III injury where the complaint alleged that the defendant's vehicle systems

2  "download[ed] all text messages and call logs from [the p]laintiffs' cellphones"

3  and "permanently store[d] the private communications without [the p]laintiffs'

4  knowledge or consent," which stated a plausible violation of the substantive

5  privacy right codified by the Washington Privacy Act. *Id.* at *3.  Similarly,

6  Plaintiff Morgan alleges that Defendant obtained his cell phone number without his

7  actual knowledge or consent by using deceptive, false, or fraudulent assurances of

8  privacy, which states a plausible violation of the substantive privacy right codified

9  by RCW 9.26A.140.  *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir.

10  2017) (finding that the Video Privacy Protection Act (VPPA) protected a

11  consumer's substantive privacy right to "retain control over their personal

12  information"); *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (finding the

13  plaintiff established Art. III standing by alleging a violation of the Fair Credit

14  Reporting Act's authorization requirement, which constituted "a concrete injury

15  when applicants are deprived of their ability to meaningfully authorize" a

16  _____

17  distinguished because it did not involve a similar abandonment/mootness issue,

18  and stated they were still considering an appeal of the Ninth Circuit's opinion.

19  Plaintiff's counsel did not address how *Jones* can be distinguished for the purposes

20  of arguing that Subsection (1)(b) does not present an Article III injury in fact.

ORDER - 28

prospective employer to check their credit); *Sanchez v. Los Angeles Dep't of Transp.*, 39 F.4th 548, 554 (9th Cir. 2022) (finding an Art. III injury in the defendant city's collection of location data from e-scooters, "without more," as an alleged violation of the plaintiff's Fourth Amendment rights).

There is simply no basis to find that a violation of RCW 9.26A.140(1)(b) does not present an Article III injury-in-fact.  As such, there is no defect in the Court's Article III jurisdiction that would warrant remand.

**C. Conclusion**

For the above reasons, the Court denies the Motion to Remand.

**PLAINTIFF'S MOTION TO CERTIFY**

Plaintiff Morgan seeks to certify two questions to the Washington Supreme Court concerning the interpretation of RCW 9.26A.140(1)(b):

> 1. Does a person violate RCW 9.26A.140(1)(b) if the person obtains a cell phone number from the customer by false or deceptive means?
> 2. Does a person use deceptive means to obtain a phone number in violation of RCW 9.26A.140(1)(b) [under] the same standard for "deceptive act or practice" that the Washington Supreme Court has applied to claims arising under the Washington Consumer Protection Act, RCW 19.86.020?

ECF No. 67 at 5.  Plaintiff Morgan argues that certification is appropriate due to the lack of Washington case law interpreting this statute, the parties' dispute over the proper approach to statutory interpretation, the importance of the questions

ORDER - 29

presented, the interests of judicial efficiency, and the spirit of comity and federalism.  ECF No. 67 at 7-14.

In response, Defendant argues that the procedural histories of this case and *Gray v. Twitter*—which included a similar motion to certify—reflect a pattern of "gamesmanship over the last three years" by Plaintiff's counsel.  ECF No. 71 at 2-6.  Defendant contends that this motion is "simply the latest in a long line of maneuvers by Plaintiff's counsel" to avoid unfavorable outcomes, "result[ing] in a waste of judicial and party resources."  ECF No. 71 at 7.

**A. Legal Standard**

Washington law permits a federal court to certify questions of state law to the Washington Supreme Court when, in the federal court's opinion, "it is necessary to ascertain the local law of [Washington] in order to dispose of such proceeding and the local law has not been clearly determined."  RCW 2.60.020. The Ninth Circuit has explained that a court should consider four factors in deciding whether to exercise its discretion to certify:

> (1) whether the question presents "important public policy ramifications" yet unresolved by the state court;
> (2) whether the issue is new, substantial, and of broad application;
> (3) the state court's caseload; and
> (4) "the spirit of comity and federalism."

*Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (citing *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003); *Lehman Bros. v. Schein*, 416 U.S.

ORDER - 30

386, 391 (1974)).

"Certification is by no means 'obligatory' merely because state law is unsettled; the choice instead rests 'in the sound discretion of the federal court.'" *McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) (citing *Lehman Brothers*, 416 U.S. at 391). "Our system of 'cooperative federalism' presumes federal and state courts alike are competent to apply federal and state law." *Id.* Moreover, certification "can prolong the dispute and increase the expenses incurred by the parties." *Id.* (citation omitted). The "burden" of certification is also borne by the state courts. *See Cruz v. City of Spokane*, 66 F.4th 1193, 1198 (9th Cir. 2023). As such, "[c]ertification is not to be ordered lightly." *Bliss Sequoia Ins. & Risk Advisors, Inc. v. Allied Prop. & Cas. Ins. Co.*, 54 F.4th 417, 423 (9th Cir. 2022). "When there is little reason to doubt the answer to a state-law question," a federal court "ought not outsource [its] work to a state court simply because [it] find[s] the burden of decision unwelcome." *Id.*

**B. Discussion**

The Court is unpersuaded that certification of Plaintiff Morgan's questions would be an appropriate burden to impose on the parties and the Washington Supreme Court. *See id.*

First, the Court finds that the questions proposed do not present important public policy ramifications or issues that are new, substantial, and of broad

1    application. *See Murray*, 924 F.3d at 1072. Plaintiff Morgan argues that

2    interpretation of RCW 9.26A.140 presents important public policy ramifications of

3    broad applicability, based on increasing concerns of cell phone users about "[t]he

4    abuse of telephone records and the civil remedies available to address such

5    abuses," and the statute's impact on "the enforcement of other statutes that contain

6    both civil and criminal remedies, affecting a wide swath[e] of activities subject to

7    state regulation." ECF No. 67 at 7. Plaintiff Morgan provides no citation

8    supporting these contentions. As he acknowledges, "[q]uestions as to the meaning

9    of this statute are by definition novel and unresolved," as "no precedent

10   whatsoever exists under that statute." *Id.* RCW 9.26A.140 was enacted in 2006.

11   That the Washington courts have yet to substantively interpret it in the seventeen

12   years since it was enacted is evidence that the statute does not have important

13   public policy ramifications. The issue of interpretation has also gone unneeded for

14   seventeen years—it is not new, substantial, or of broad application.

15       Second, the Court also finds that the state court's caseload, and the spirit of

16   comity and federalism, do not weigh in favor of certification.[18] *See Murray*, 924

17

18   [18] Plaintiff's counsel contended at the hearing that the Court "previously indicated"

19   that the Washington Supreme Court's docket "compares favorably to an

20   overloaded district court's docket." ECF No. 75 at 19. It is unclear what counsel

F.3d at 1072.  The parties have already thoroughly briefed the issue of statutory

interpretation in relation to Defendant's Motion to Dismiss.  *See* ECF Nos. 43, 65,

69.  As explained below, that briefing provides "little reason to doubt the answer"

to Plaintiff Morgan's questions of statutory interpretation—Defendant's alleged

conduct does not fall within the scope of RCW 9.26A.140(1)(b) under the plain

text of the statute.  *See Bliss Sequoia Ins.*, 54 F.4th at 423.  The Court will not

"outsource" this work to the state courts simply to avoid the burden of this issue of

interpretation.  *See id.*

Finally, the procedural histories of this case and *Gray v. Twitter* support

Defendant's contention that this motion is mere gamesmanship.  In the August 31,

2023, Order, the Court noted Plaintiff's counsel's "seemingly inconsistent

positions" throughout the litigation to date and the "unusual timing" of his request

to further amend the complaint.  ECF No. 63 at 12.  These phenomena have only

continued, with Plaintiff Morgan filing the instant Motion to Remand only five

days thereafter and the instant Motion to Certify on September 26, 2023.  ECF

---

was referring to by this statement.  But to be clear, the Court does not believe that

this case would impose any less of a burden on the Washington courts' caseloads,

particularly given the circuitous manner in which Plaintiff's counsel has chosen to

litigate this matter over the past few years.

ORDER - 33

Nos. 64, 67.  Moreover, Plaintiff's counsel filed a similar motion to certify in *Gray v. Twitter*, which was fully briefed and pending when Plaintiff's counsel voluntarily dismissed the entire case.[19]  *See Gray*, No. 20-CV-1389 (W.D. Wash. 2021-22), ECF Nos. 24, 27, 29, 36.  These patterns (1) indicate that this case would be particularly burdensome on the Washington courts and (2) cast doubt on whether Plaintiff's counsel is seeking certification in good faith.

---

[19] At the hearing, Plaintiff's counsel claimed that this case was filed because counsel "believed that our only course available was to dismiss [*Gray v. Twitter* and] refile in state court, "so that if it were ultimately determined that [the district court in the Eastern District of Washington] lacks jurisdiction" following *TransUnion* the case could be remanded to state court instead of dismissed outright.  ECF No. 75 at 20.  Counsel further stated that "it turned out the Eastern District was a more favorable venue for a variety of reasons" and that counsel had "anticipated" that Defendant would remove the state case.  *Id.* at 20-21.  The Court notes that it was unusual for counsel to claim that it merely filed in state court as a failsafe in case the federal courts were later deemed to lack Article III jurisdiction, immediately after arguing (for the second time) that the Court lacks Article III jurisdiction.

ORDER - 34

## C. Conclusion

For the above reasons, the Court denies Plaintiff's Motion to Certify.

### DEFENDANT'S MOTION TO DISMISS

Defendant seeks dismissal of the First Amended Complaint under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff Morgan has failed to state a plausible claim under either of the RCW 9.26A.140(1)(a) or (1)(b) "theories." ECF No. 43 at 11-12. Plaintiff Morgan's abandonment of the Subsection (1)(a) claim suffices to dismiss that claim with prejudice. Only the Subsection (1)(b) claim remains to be addressed.

## A. Legal Standard

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint, but legal conclusions are not entitled to the same "assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**B. Summary of Factual Allegations[20]**

Plaintiff Glen Morgan is a Washington resident and a Twitter user. ECF No 35 at 4 ¶¶ 17-18. Defendant Twitter is a for-profit company incorporated in Delaware and with a principal place of business in California. *Id.* at 4 ¶¶ 19-20.

On July 30, 2016, Plaintiff Morgan provided his cell phone number to Defendant after Defendant promised it would "protect the nonpublic information in his account, including his cell phone number, from unwanted disclosure." *Id.* at 20 ¶¶ 115-18. Defendant "did not use reasonable means to protect [Plaintiff Morgan's] private data, including his cell phone number, from unwanted disclosure." *Id.* at 20 ¶ 119. Defendant knew that "the means it had been employing to protect user data" against "unwanted disclosure were inadequate." *Id.* at 20 ¶ 120. Defendant also "knew that it was not exercising reasonable controls to limit the use of [Plaintiff Morgan's] cell phone number to the purposes he selected and that [Defendant] had promised." *Id.* at 20 ¶ 121. Further, Defendant "knew that its assurances of reasonable protection of cell phone [numbers] from unwanted disclosure were false." *Id.* at 20 ¶ 122. In sum,

---

[20] For the purposes of a Rule 12(b)(6) motion to dismiss, the factual allegations in the complaint are accepted as true, but not "legal conclusion[s] couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-56).

ORDER - 36

1    Defendant obtained Plaintiff Morgan's cell phone number "through the use of

2    deceptive and/or false means," including "assurances that [Plaintiff Morgan] could

3    choose the extent to which his user data, including his cell phone number, could be

4    exploited by [Defendant] for commercial purposes." *Id.* at 20 ¶¶ 123-24.

5         Defendant also obtained the telephone records of other Washington persons

6    through the "same deceptive and/or false means it employed to obtain [Plaintiff

7    Morgan's] cell phone number." *Id.* at 21 ¶¶ 125-26.

8    **C. Discussion**

9         Plaintiff Morgan has failed to defend his Subsection (1)(a) claim in his

10   response to a pending dispositive motion—the Motion to Dismiss. *See Ramirez*,

11   560 F.3d at 1026. He had a "full and fair opportunity to ventilate [his] views" on

12   that issue, and instead opted to "take[] a position that concede[s] the argument" that

13   Defendant "violated RCW 9.26A.140(1)(a). *See* ECF No. 64 at 4. Accordingly, the

14   Court grants Defendant's Motion to Dismiss the Subsection (1)(a) claim as

15   uncontested and dismisses Plaintiff Morgan's Subsection (1)(a) claim with

16   prejudice.

17        Plaintiff Morgan does contest the dismissal of his Subsection (1)(b) claim,

18   so the Court proceeds with the Rule 12(b)(6) analysis of that claim.

19        First, Defendant argues that Plaintiff Morgan's own telephone number is not

20   (1) a "telephone record," (2) "retained by a telecommunications company," nor (3)

"procure[d]" by Defendant, as defined by the statutory text, the legislature's purpose, and the constructive rule of lenity. ECF No. 43 at 13-18. Plaintiff Morgan responds that the statutory text and purpose lead to the opposite conclusion. ECF No. 65 at 7-20.

Second, Defendant argues that Plaintiff Morgan has failed to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) for a claim alleging fraud. ECF No. 43 at 19-20. Plaintiff Morgan denies that Rule 9(b) applies. ECF No. 65 at 20-21.

Third, Defendant argues that Plaintiff Morgan has failed to meet the pleading standard of Fed. R. Civ. P. 8(a) by failing to identify the content and context of the assurances Defendant allegedly made, then breached. ECF No. 43 at 20-21. Plaintiff Morgan responds that he has alleged adequate facts surrounding the assurances Defendant made in its settlement agreements with the Federal Trade Commission and in the "over 20,000 statements [it] made promising users data security." ECF No. 65 at 21-22.

### 1. Statutory Interpretation

The parties' arguments as to the meaning of "telephone record," "telecommunications company," and "procure" present three considerations in determining whether Plaintiff Morgan's factual allegations describe conduct prohibited by RCW 9.26A.140(1)(b).

a.  Applicable Law

Plaintiff Morgan argues that Defendant has strayed from Washington's rules of interpretation, which govern the interpretation of a Washington statute.  ECF No. 65 at 5-6.  "As a general matter, the task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right" is not adversely affected by the federal forum.  *High Country Paving, Inc. v. United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir. 2021) (citations, quotation marks, and alterations omitted).  Accordingly, Washington's rules of statutory interpretation govern whether Plaintiff Morgan has adequately stated a claim for relief under RCW 9.26A.140(1)(b).

b.  Washington's Rules of Interpretation

The Washington Supreme Court instructs that the "primary obligation" of statutory interpretation "is to give effect to the legislature's intent."  *Rest. Dev., Inc. v. Cananwill, Inc.*, 80 P.3d 598, 601 (Wash. 2003) (en banc).  "[R]eview always begins with the plain language of the statute" but may include "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question."  *Id.* (citation and quotation marks omitted).  "[A] court must not add words where the legislature has chosen not to include them."  *Id.*  "A court also must construe statutes such that all of the language is given effect, and no portion is rendered meaningless or superfluous."  *Id.* at 601-02

(citations, quotation marks, and alterations omitted).  Then, if the statute remains "subject to more than one reasonable interpretation, [the court] may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent."  *Id.* at 602 (citation omitted).

### c.  The Statutory Text

The relevant portions of that statute provide as follows:

(1) A person is guilty of the unauthorized sale or procurement of telephone records if the person: . . .
    (b) By fraudulent, deceptive, or false means obtains the telephone record of any resident of this state to whom the record pertains; . . .

(5) . . .
    (a) "Telecommunications company" has the meaning provided in RCW 9.26A.100 and includes "radio communications service companies" as defined in RCW 80.04.010.
    (b) "Telephone record" means information retained by a telecommunications company that relates to the telephone number dialed by the customer or the incoming number or call directed to a customer, or other data related to such calls typically contained on a customer telephone bill such as the time the call started and ended, the duration of the call, the time of day the call was made, and any charges applied. "Telephone record" does not include any information collected and retained by customers using caller identification or other similar technologies.
    I "Procure" means to obtain by any means, whether electronically, in writing, or in oral form, with or without consideration.

ORDER - 40

Defendant points to the phrases, "retained by a telecommunications company" and the statutory definition's apparent focus on protecting incoming or outgoing call records that are obtained from a particular source—the telecommunications company, not the customer.  ECF No. 43 at 13-16.  Plaintiff Morgan counters that the definition expressly refers to telephone numbers as a "*type* of data protected by the statute" and does not exclude telephone numbers that are obtained directly from the number owner.  ECF No. 65 at 7-9, 11-13 (emphasis in original).

The Court finds that the statutory text is unambiguous on two key points.  First, the statutory language cannot reasonably be interpreted to include the phone number of the customer alone.  If the statute protected phone numbers outright, the long clause following "telephone number" would be rendered meaningless or superfluous.  *See Rest. Dev.*, 80 P.3d at 602.  Rather, the statutory text is plainly focused on protecting the consumer's call history data—i.e., information about who(m) the phone holder called or was called by; and the call date, time, and duration.  As Plaintiff Morgan has only alleged that Defendant obtained his phone number, he has failed to state a claim under RCW 9.26A.140(1)(b).

Second, the definition of "telephone record" expressly distinguishes between call history that is "retained by a telecommunications company" (protected) versus call history that is "collected and retained by customers" via caller ID and similar

1    tools (not protected).  The logic behind this distinction is plain—telephone

2    customers have more control and agency over the disclosure of records within their

3    own possession than records held by their telecommunications companies, who

4    may be less interested in keeping those records private.  As Plaintiff Morgan has

5    only alleged that Defendant obtained his phone number from Plaintiff Morgan

6    himself, not Plaintiff Morgan's telecommunications company, he has failed to state

7    a claim under RCW 9.26A.140(1)(b).

8        *2.  Rule 9(b)*

9        Defendant next contends that Plaintiff Morgan's claim is "grounded" or

10    "sound[s] in fraud," such that Rule 9(b) applies.  ECF No. 43 at 19.  Defendant

11    then argues that Plaintiff Morgan has failed to meet Rule 9(b)'s requirements

12    where he has failed to "allege the specific contents of the 'assurances'" Defendant

13    supposedly made.  ECF No. 43 at 19-20.  In response, Plaintiff Morgan argues he

14    is relying on the "deceptive" and/or "false" prongs of the statute, not the

15    "fraudulent" prong, such that Rule 9(b) does not apply.  ECF No. 65 at 20-21.

16        a.  Applicability of Rule 9(b)

17        Fed. R. Civ. P. 9(b) provides that, "[i]n alleging fraud or mistake, a party

18    must state with particularity the circumstances constituting fraud or mistake.

19    Malice, intent, knowledge, and other conditions of a person's mind may be alleged

20    generally."  "Rule 9(b)'s particularity requirement applies to state-law causes of

1  action" as well as federal-law causes of action.[21]  *Vess v. Ciba-Geigy Corp. USA*,

2  317 F.3d 1097, 1103 (9th Cir. 2003).  If "fraud is not an essential element of a

3  claim, only allegations ('averments') of fraudulent conduct must satisfy" Rule

4  9(b)'s heightened pleading standard.  *Id.* at 1105.  "Fraud can be averred by

5  specifically alleging fraud, or by alleging facts that necessarily constitute fraud

6  (even if the word 'fraud' is not used)."  *Id.*

7          In *Vess*, the Ninth Circuit looked to the state-law definition of "fraud" to

8  determine whether any of the plaintiff's allegations were "grounded in fraud" and

9  therefore averments of fraudulent conduct subject to Rule 9(b).  *Id.* at 1105-06.  A

10  fraud claim under Washington law has nine essential elements: 1) a representation

11  of existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its

12

13  [21] Plaintiff disagrees with this, instead arguing that deceptive-conduct claims under

14  Washington law "do not require a fraud pleading standard."  ECF No. 65 at 20.

15  This misconstrues the applicability of Rule 9(b) under the *Erie* doctrine.  State law

16  defines the substantive requirements for an allegation of fraud, but if those

17  requirements are met, then Rule 9(b)'s procedural requirements apply.  *See Kearns

18  v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (rejecting the plaintiff's

19  argument that Rule 9(b) does not apply to a California consumer protection

20  statute).

falsity; (5) the speaker's intent that it be acted upon by the receiving party; (6) the receiving party's ignorance of its falsity; (7) the receiving party's reliance on the truth of the representation; (8) the receiving party's right to rely on the truth of the representation; (9) consequent damage. *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012) (en banc).

Although Plaintiff Morgan does not expressly allege "fraud," his allegations contain all nine elements: (1) that Defendant assured Plaintiff Morgan that it protected users' phone numbers and complied with users' privacy choices; (2) that users like Plaintiff Morgan consider such assurances material in deciding whether to disclose their phone number; (3) that the assurances were false in light of Defendant's practices; (4) that Defendant knew the assurances were false; (5) that Defendant intended users to rely on its false assurances; (6) that this falsity was "unbeknownst to any Twitter user"; (7) that Plaintiff Morgan and other users relied on these assurances; (8) that Plaintiff Morgan and other users were "entitled" to assume that Defendant's assurances were truthful; and (9) that Plaintiff Morgan sustained injury as a result of these false assurances. ECF No. 35 at 6 ¶¶ 35-38, 9 ¶¶ 58-59, 10 ¶¶ 62-66, 20 ¶¶ 119-22, 23 ¶ 142. In short, Plaintiff Morgan's Subsection (1)(b) claim sounds in fraud.

b. Sufficiency of Pleading Under Rule 9(b)

ORDER - 44

1    "To properly plead fraud with particularity under Rule 9(b), 'a pleading

2    must identify the who, what, when, where, and how of the misconduct charged, as

3    well as what is false or misleading about the purportedly fraudulent statement, and

4    why it is false.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.

5    2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

6    1047, 1055 (9th Cir. 2011)).  "Rule 9(b) serves not only to give notice to

7    defendants of the specific fraudulent conduct against which they must defend, but

8    also to deter the filing of complaints as a pretext for the discovery of unknown

9    wrongs," to protect defendants from reputational harm, and "to prohibit plaintiffs

10    from unilaterally imposing upon the court, the parties and society enormous social

11    and economic costs absent some factual basis."  *Bly-Magee v. California*, 236 F.3d

12    1014, 1018 (9th Cir. 2001) (citation, quotation marks, and alterations omitted).

13        The "what" of Defendant's alleged false assurances, and "how" those

14    assurances were plausibly false at the time they were made, are not pleaded with

15    specificity.  Plaintiff Morgan alleges only that Defendant promised him it "would

16    protect the nonpublic information in his account, including his cell phone number,

17    from unwanted disclosure" and "that [he] could choose the extent to which his user

18    data, including his cell phone number, could be exploited" by Defendant." ECF

19    No. 35 at 20 ¶¶ 118, 123.  As for the "how," Plaintiff Morgan alleges that

20    Defendant "knew" that the "means" and "reasonable controls" it was using to

1    fulfill those promises were inadequate, and it "knew that its assurances of

2    reasonable protection of cell phone [numbers] from unwanted disclosure were

3    false." ECF No. 35 at 20 ¶¶ 120-22.  This fails to give Defendant notice of the

4    particular false statement it must defend, and it falls short of demonstrating that the

5    claim has a plausible factual basis justifying its reputational, social, and economic

6    costs.  *See Bly-Magee*, 236 F.3d at 1018.

7        Such vagueness is particularly confounding where Plaintiff Morgan alleges

8    that "[o]n average, Twitter made at least 4,000 public statements per year assuring

9    users that it would protect their privacy."  ECF No. 35 at 14 ¶ 88.  Plaintiff Morgan

10    is best placed to identify which, among the thousands of statements Defendant

11    allegedly made to users in 2016, was the false statement he relied upon.  But he

12    failed to do so—in the original Complaint, the First Amended Complaint, and the

13    proposed Second Amended Complaint he submitted 10 days after Defendant filed

14    the instant Motion to Dismiss.  *See* ECF No. 1 at 38-47; ECF No. 35; ECF No. 47-

15    1.

16        Accordingly, Plaintiff Morgan has failed to state a plausible claim for relief

17    under Fed. R. Civ. P. 9(b).

18        *3.  Rule 8(a)*

19        Fed. R. Civ. P. 8(a)(2) "requires that the allegations in the complaint 'give the

20    defendant fair notice of what the plaintiff's claim is and the grounds upon which it

ORDER - 46

rests.'" *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  "Providing a list of hypothetical possible" grounds for a claim "is not a substitute for investigating and alleging the grounds for a claim." *Id.* at 969.

As explained above, Plaintiff Morgan has failed to identify the false statement that induced him to provide his phone number to Defendant.  The First Amended Complaint references a few statements Defendant made in a 2019 notice to users and in its 2011 and 2020 settlements with the Federal Trade Commission.  Plaintiff Morgan does not allege that these are what he relied on in 2016.  At best, these amount to a "list of hypothetical possible" statements and would still be insufficient under *Pickern*.  *See* 457 F.3d at 969.

Therefore, even if Plaintiff Morgan's claim did not sound in fraud, the First Amended Complaint would still fail to meet the notice pleading standard required by Rule 8(a)(2).  *See id.* at 968-69.

**D. Whether Amendment Should Be Permitted**

Plaintiff Morgan did not request leave to amend in his opposition to Defendant's Motion to Dismiss.  *See* ECF No. 65.  At any rate, Plaintiff Morgan has already amended the complaint once, without complying with the requirements of Fed. R. Civ. P. 15, and requested a second opportunity to amend, which the Court denied on the basis of futility, prejudice to Defendant, and undue delay.

ECF No. 63 at 5-11.  The textual inapplicability of RCW 9.26A.140 is not an issue that can be feasibly corrected by amendment.  As for the deficiencies under Rules 8 and 9, Plaintiff's Counsel has had notice of these issues since the magistrate judge's Report and Recommendation in *Gray v. Twitter*, if not earlier, yet repeatedly failed to address them.  *See* Report & Recommendation at 18-22, *Gray v. Twitter, Inc.*, No. 20-cv-1389 (W.D. Wash. Mar. 17, 2021), ECF No. 22.  It is clear that further amendment would be futile, cause prejudice to Defendant, and result in undue delay.

## CONCLUSION

Plaintiff Morgan has abandoned his claim under RCW 9.26A.140(1)(a) by failing to defend it in response to Defendant's Rule 12(b)(6) Motion to Dismiss. Further, Plaintiff Morgan's factual allegations, taken as true, do not fall within the scope of RCW 9.26A.140(1)(b), and further, he has failed to meet the pleading standards of Rule 9(b) and Rule 8(a)(2).  For these reasons, the Court grants Defendant's Motion to Dismiss and dismisses this case with prejudice.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion to Remand the First Amended Complaint**, ECF No. 64**, is **DENIED**.

2. Plaintiff's Motion to Certify, **ECF No. 67**, is **DENIED**.

3. Defendant's Motion to Dismiss, **ECF No. 43**, is **GRANTED**.

ORDER - 48

**4.** All claims in Plaintiff's First Amended Complaint are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this order, provide copies to counsel, **ENTER JUDGMENT** in favor of Defendant, and **CLOSE the file**.

DATED November 22, 2023.


*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 49